IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JESSICA RAMSAY,                          )
                                         )
        Plaintiff,                       )
                                         )
        v.                               )    Civil Action No. 2:19-cv-02002-JCJ
                                         )
NATIONAL BOARD OF MEDICAL                )
EXAMINERS,                               )
                                         )
        Defendant.                       )
                                         )

## DECLARATION OF STEVEN G. ZECKER, PH.D.

I, Steven G. Zecker, declare as follows:

1.      My name is Steven G. Zecker. I am over 18 years of age and, unless otherwise stated, I have personal knowledge of the matters addressed herein.

2.      I am a licensed clinical psychologist.  I am also an Associate Professor in the Department of Communication Sciences and Disorders at Northwestern University.  Courses that I have taught or am teaching include "Psychoeducational Assessment and Testing Principles" and "Attention Deficit Disorder and Related Behavior Disorders."   A true and correct copy of my curriculum vitae is attached at **Exhibit A.**

3.      My professional expertise relates to the diagnosis and performance of individuals with disordered learning conditions and research into those conditions, particularly learning disabilities (LD) and Attention Deficit-Hyperactivity Disorder (ADHD). I have published articles and delivered many paper presentations on these topics. Much of my research involves ADHD, auditory processing in children with reading disabilities, giftedness and LD, and the development of spelling. I oversee the clinical practice at Northwestern's Speech, Language and Learning

diagnostic clinic. As part of my work, I frequently meet with young adults who have diagnoses of learning and attention problems to assess both their self-reported symptoms and their objective performance on various tests of cognitive, academic, and behavioral functioning.

4.      I have served for more than ten years as an independent professional reviewer for organizations that administer or rely upon standardized tests, in connection with requests for testing accommodations by prospective examinees that are based, at least in part, on an ADHD or LD diagnosis. For each of these organizations, my objective is to provide a neutral, professionally sound evaluation of whether the documentation submitted by the prospective examinee in support of the accommodations request demonstrates the existence of one or more impairments, diagnosed in accordance with applicable professional standards, that result in substantial functional limitations in the candidate's ability to read, learn, or perform other major life activities, as compared to most people in the general population.

5.      I was asked by NBME to perform an independent review of two requests for testing accommodations that NBME received from Jessica E. Ramsay for the United States Medical Licensing Examination. I prepared two reports for NBME based on my reviews. A true and correct copy of my January 13, 2017 letter report is attached at **Exhibit B**. A true and correct copy of my July 19, 2018 letter report is attached at **Exhibit C**. The documents that I reviewed are set out in those letter reports, and my discussion below is based on my conclusions from reviewing those documents. My review and the opinions addressed in my reports and below are restricted to Ms. Ramsay's ADHD and LD diagnoses, not her reports of migraines with aura and CDPTS diagnoses.

6.      I have reviewed these reports and reaffirm my belief in the opinions expressed therein.  The discussion that follows addresses some of the points set out in my letter reports to NBME.

*Ms. Ramsay's Early Development and Acquisition of Basic Academic Skills*

7.      When arriving at a diagnosis of a specific learning disability, it is crucial to establish early difficulties in the development and acquisition of basic academic skills.  According to the documents I reviewed, however, Ms. Ramsay did not submit report cards or school records from any part of her kindergarten through eighth grade education to NBME to review.  Such documentation could have provided evidence of an early impairment in functioning, essential to the diagnosis of ADHD and LD, neurodevelopmental disorders with an onset of symptoms in childhood.

8.      Although Ms. Ramsay's personal statement identifies difficulties that she says have existed "since [she] was little," Ms. Ramsay also reported that she was in a gifted program through fifth grade and in an accelerated academic program from sixth grade through high school. In high school, Ms. Ramsay obtained mostly "A" grades, with no grade below "B+" in the transcript that she provided, and had earned a 3.75 GPA throughout her first three years.  According to documents I reviewed, this high level of academic success was achieved in the absence of any formal accommodations.

9.      According to the college transcript that she submitted, Ms. Ramsay graduated from Ohio State with a 3.58 GPA, with grades in the "A/B" range in all but one course.  Based on the documents I reviewed, it does not appear that Ms. Ramsay began receiving accommodations at Ohio State until May 2010.

- 3 -

10. According to the documents I reviewed, Ms. Ramsay took the MCAT in 2011 without any accommodations. Her score (30M) placed her at the 79th percentile, an above-average score in comparison with other medical school aspirants.

11. According to the documents I reviewed, Ms. Ramsay took the Step 1 exam in July 2017 under standard administration conditions and obtained a score (191) that was one point below the passing criterion.

*Evaluation History*

12. According to the documents I reviewed, Ms. Ramsay was evaluated in 1997, when she was seven years old and in second grade, by an optometrist, Dr. Tanguay, because of concerns about letter reversals. Dr. Tanguay did not issue a report but wrote a half-page letter in which she summarized her findings. Dr. Tanguay apparently administered a single test, the Test of Visual-Perceptual Skills, which was incorrectly administered and incompletely scored. Ms. Ramsay reportedly underwent perceptual skills training with Dr. Tanguay for four months in 1998, after which Dr. Tanguay reported that Ms. Ramsay "scored above age level in all categories when retested" and that her comprehension and perceptual skills were "excellent." Dr. Tanguay apparently never administered any reading tests for Ms. Ramsay and did not diagnose Ms. Ramsay with a reading disorder (nor would such a diagnosis have been appropriate).

13. According to May 2010 notes of a March 2009 office visit that I reviewed, Ms. Ramsay visited Dr. Alan Smiy for a 30-minute appointment because of a complaint of "ADD/ADHD." In his brief history, Dr. Smiy writes that Ms. Ramsay reported "no problems" in high school (contrary to Ms. Ramsay's personal statements submitted to NBME) and that "college stress" is causing her to "switch letters around a bit." Dr. Smiy apparently did not

administer any tests and summarized his assessment by writing "add vs. possible dyslexia—pt has more focus issues than dyslexic tendencies." He recommended a trial of Ritalin. However, given the absence of any formal testing during this brief appointment, no formal diagnosis was provided, and none was appropriate in my professional opinion.

14.     According to the documents I reviewed, Dr. Smiy completed an "ADD/ADHD Verification Form" from Ohio State University for Ms. Ramsay on August 13, 2010. He indicated that Ms. Ramsay qualified for the diagnosis of ADHD-Inattentive Type and was currently taking Adderall because methylphenidate had "failed" to treat her difficulties. Dr. Smiy indicated that Ms. Ramsay was exhibiting five of the nine DSM-IV (Diagnostic and Statistical Manual of Mental Disorders, 4th Edition) symptoms of inattention, and none of the nine DSM-IV Hyperactivity/Impulsivity symptoms. I note that DSM-IV required at least six symptoms in either category for a valid ADHD diagnosis to be provided, and thus, based on these results, Ms. Ramsay failed to qualify for an ADHD-Inattentive diagnosis. Dr. Smiy did not provide a specific recommendation for an extended time accommodation, writing only that she "may need additional time."

15.     According to the documents I reviewed, Mr. Charles Livingston, a licensed social worker and limited licensed psychologist in Michigan, evaluated Ms. Ramsay in September 2014, by which time she was in medical school. Mr. Livingston did not generate a complete report of his testing; instead he provided a one-page summary of results and conclusions to Dr. Ziemkowski at Ms. Ramsay's medical school. He indicated that Ms. Ramsay reported that she was tired and stressed and concerned that her school grades did not show her knowledge. In an "Addendum" to his initial summary (provided in 2016), Mr. Livingston indicates that he administered a mental ability test, the Wechsler Adult Intelligence Scale-IV (WAIS-IV) and an

achievement test, the Weschler Individual Achievement Test (WIAT). These tests did not directly assess attentional functioning, although Mr. Livingston indicates that Ms. Ramsay scored at the 63rd percentile on the WAIS-IV Working Memory Index, a composite score based on the results of two subtests most dependent on intact attention. In the "Addendum" to his report, Mr. Livingston discussed other documentation that he said supported an ADHD diagnosis, but in my opinion, none of this provided strong support for a formal diagnosis of ADHD. I also note that, although Mr. Livingston indicated "there is historical information that suggests a likelihood of dyslexia," the only documentation of reading achievement (the WIAT Reading Comprehension test that Mr. Livingston administered) yielded an above average (99th percentile) score.

16.     In the report, Mr. Livingston concluded that the results of his evaluation supported the diagnosis of ADHD-I (Inattentive type), severe; however, the WAIS-IV measures most dependent on attentional functioning that he reported placed her above the mean and he never demonstrated that Ms. Ramsay met the complete set of diagnostic criteria for a diagnosis of ADHD, including an onset of symptoms in childhood and impairment in multiple domains of daily living. He wrote that an extended time accommodation on tests "should be considered," despite apparently having not identified a deficit in academic fluency. Further, despite Ms. Ramsay's comments to Mr. Livingston that she was stressed, he conducted no testing of her psychological functioning. In my professional opinion, this testing was not adequate for establishing a diagnosis of ADHD-I or for supporting the provision of accommodations, including extended time.

17.     According to the documentation I reviewed, Dr. Alan Lewandowski evaluated Ms. Ramsay in October 2017, also while she was in medical school. Because she had not been

approved for Step 1 accommodations, Ms. Ramsay was seeking a more comprehensive

assessment. Despite having described herself as experiencing "chronic academic disability" to

Dr. Lewandowski, Ms. Ramsay also reported to Dr. Lewandowski that she graduated from high

school with a 3.8 GPA and scored "between 27 and 30" on the ACT under standard

administration conditions. She also indicated that she had seen a counseling psychologist for

unexplained reasons (although she acknowledged some situational dysphoria) and that the

counseling resulted in a "very positive outcome." Dr. Lewandowski reported that Ms. Ramsay

presented "in mild distress" but did not elaborate other than to write that her mood was anxious

and she was frustrated. She reported that she had been taking an antidepressant (fluoxetine) but

it had been discontinued. She reported taking seven other medications, including Adderall (for

ADHD), Buspar and Xanax (anti-anxiety medications), and Ambien (apparently to aid sleep).

Despite Ms. Ramsay's description of herself in her personal statement to NBME as always

moving, Dr. Lewandowski described her motor movements as "normal for age", and he makes

no mention of any hyperactive behaviors during the course of the evaluation.

18.    According to the documents I reviewed, based on this brief two-hour consultation,

Dr. Lewandowski did not provide any diagnosis but indicated he would be conducting

comprehensive testing in the future to "better clarify" Ms. Ramsay's status.

19.    According to the documents I reviewed, Dr. Lewandowski subsequently saw Ms.

Ramsay in December 2017 and generated a report of the "Neurocognitive Examination" that he

conducted. The report consists mainly of a table of test scores, with minimal discussion. Dr.

Lewandowski did not provide the names of any of the tests he administered in this report, which

is highly unusual. He indicated that Ms. Ramsay's overall mental ability was high average, with

the various domains of cognitive functioning ranging from below average to above average. All

measures of academic functioning resulted in scores at or above the 73rd percentile. Nine unspecified neuropsychological test results were presented; seven placed Ms. Ramsay in the normal range and two were "abnormal." Among six measures of attentional functioning, four resulted in normal scores and two were below average. Psychological testing indicated moderate depression, inefficient thinking. and health concerns. Based on these results, Dr. Lewandowski diagnosed Ms. Ramsay with Attention Deficit Disorder, Hyperactive, moderate (ADHD-H/I) and Learning Disability (LD), nonverbal (abnormal scanning and processing speed). Notably, he did not diagnose her with any affective disorder, although a substantial part of his recommendations refer to Ms. Ramsay's "mood disturbance" and ongoing affective struggles. Further, Dr. Lewandowski failed to indicate on what basis the diagnosis of an attention deficit was made, given that Ms. Ramsay performed largely within the normal range on the test assessing attention that he administered to her. He also provided no indication that Ms. Ramsay met the complete set of criteria for an ADHD diagnosis. Similarly, Dr. Lewandowski did not provide a rationale for his LD diagnosis, and in the absence of specific tests that were administered and a discussion of the findings, there was no basis for such a diagnosis in my professional opinion.

20.     According to the documents I reviewed, in a February 2018 "Addendum," Dr. Lewandowski provided the names of the tests he had administered during the December testing, and in a June 2018 letter to Ms. Ramsey, Dr. Lewandowski again provided the names of the tests as well as tables and plots of results from his earlier testing, but no additional discussion of his findings. In my professional opinion, the information presented in this additional documentation supports the conclusion that the results of Dr. Lewandowski's testing did not support the diagnosis of a disabling condition that warranted accommodations under the ADA.

*Conclusion*

21.     The documentation discussed above and in my two letter reports does not, in my professional opinion, indicate that Ms. Ramsay has a disability within the meaning of the ADA.

22.     Ms. Ramsay's academic history prior to medical school and her exceptional unaccommodated standardized test performance, in my professional opinion, provide strong evidence that Ms. Ramsay is not substantially impaired in a major life function in a manner that warrants accommodations on the USMLE under the ADA.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on August 30, 2019.

Steven G. Zecker, Ph.D.

# EXHIBIT A

CURRICULUM VITAE

**NAME:**   Steven G. Zecker

**UNIVERSITY ADDRESS:**

Northwestern University
The Roxelyn and Richard Pepper Department of Communication Sciences and Disorders
The Frances Searle Building
2240 Campus Drive #2-331
Evanston, Illinois  60208-3560
(847) 491-2477
e-mail:  zecker@northwestern.edu

**CURRENT POSITION:**

Associate Professor of Communication Sciences and Disorders

**EDUCATION:**

| | | | |
|---|---|---|---|
| B.A. | 1974 | The University of Michigan | Sociology and Psychology |
| M.A. | 1978 | Wayne State University | Psychology (Cognitive Processes) |
| Ph.D. | 1981 | Wayne State University | Psychology (Cognitive Processes) |

Certification: Illinois Registered Clinical Psychologist #071-003595

**PROFESSIONAL EXPERIENCE**

| | |
|---|---|
| 1974 | Teaching Fellow, Psychology, The University of Michigan |
| 1976 | Instructor, Psychology, Wayne State University |
| 1975-1980 | Graduate Assistant, Psychology, Wayne State University |
| 1980-1981 | Visiting Instructor, Psychology, Hamilton College |
| 1981-1983 | Visiting Assistant Professor, Psychology, Hamilton College |
| 1983-1985 | Visiting Assistant Professor, Psychology, Colgate University |
| 1985-1991 | Assistant Professor, Department of Communication Sciences and Disorders, Northwestern University |
| 1991-Present | Associate Professor, Department of Communication Sciences and Disorders, Northwestern University |

**AWARDS**

High Distinction, The University of Michigan, 1974
National Institute of Mental Health Traineeship, 1975-1978

**AWARDS (continued)**

Psi Chi Distinguished Service Award, 1983

Clarence Simon Excellence in Teaching Award, Northwestern University, 2010

## RESEARCH GRANTS RECEIVED

Identifying Specific Deficits Among "Garden Variety" Poor Readers: A Pilot Study, Northwestern University Research Grants Committee (4/1/91-3/31/92) with Joanne Carlisle.  Total amount of grant: $700.

Auditory Assessment with AEPs in Children. National Institutes of Health (7/1/93 to 6/30/96) Co-Investigator (with N. Kraus (PI), T. McGee and T. Carrell). Total amount of grant: $756,878. Renewal.  Funded 01/97-12/00.  Second renewal 1/01 to 12/03.

Neural Representation of Acoustic Elements of Speech. National Institutes of Health (7/1/02 to 6/30/06) Co-Investigator (PI: N. Kraus). Total amount of grant: $2,860,508.

Reformulating Hearing Assessment: Translating Recent Discoveries Through a Large-Scale Study in the Audiology Clinic.  National Institutes of Deafness and Other Communication Disorders (3/1/07 to 2/28/12) Co-Investigator (P.I.: S. Dhar). Total amount of grant: $2,983,904.

NIH Toolbox for Assessment of Behavioral and Neurological Function.  National Institutes of Health (10/1/06 to 9/30/11) Consultant and Steering Committee Member (P.I.: R. Gershon)

A Preschool Biomarker for Literacy. National Institutes of Child Health and Human Development (04/01/12 to 03/31/17). Co-Investigator (P.I.: N. Kraus)

## EDITORIAL RESPONSIBILITIES

Editorial Board,  Learning Disabilities: Research and Practice

Ad hoc Reviewer,  Brain and Language

Ad hoc Reviewer,  Journal of Reading Behavior

Ad hoc Reviewer,  Reading and Writing

Ad hoc Reviewer,  American Educational Research Journal

Ad hoc Reviewer, Journal of Speech, Language and Hearing Research

Ad hoc Reviewer, Journal of Medical Screening

## PUBLICATIONS: SELECTED ARTICLES

Zecker,  S.G. and Glaros, A.G. (1983). Validation of a proper control for subvocal electromyographic minimization paradigms. Journal of General Psychology, 107, 297-298.

Zecker, S.G., Tanenhaus, M.K., Glaros, A.G., & Whitman, R.D. (1984). Subvocal motor activity and contextual processing. Journal of Psycholinguistic Research, 13(3), 177-193.

Zecker, S.G., & DuMont, M. (1984). A shift from phonological recoding to direct access in reading as a result of previous exposure. Journal of Reading Behavior, 16(2), 145-158.

Zecker, S.G., Tanenhaus, M.K., Alderman, L., & Siqueland, L. (1986). Laterality of lexical codes in auditory word recognition. Brain and Language, 29, 372-389.

Zecker, S.G., & Zinner, T.E. (1987). Semantic code deficit for reading disabled children on an auditory lexical decision task. Journal of Reading Behavior, 19(2), 177-189.

Zecker, S.G. (1990). Visual similarity effects in detecting letter rhymes. Journal of General Psychology, 117(2), 171-179.

Driscoll, M.S., & Zecker, S.G. (1991). Attention deficit disorder (ADD): Are there subtypes? Learning Disabilities, 2(2), 52-63.

Zecker, S.G. (1991). Orthographic code development in normally achieving and learning disabled children. Annals of Dyslexia, 41, 178-192.

Trommer, B.L., Hoeppner, J.B., & Zecker, S.G. (1991). The go no-go test in attention deficit disorder (ADD) is sensitive to methylphenidate. Journal of Child Neurology, 6(Suppl.), 128-131.

Kraus, N., McGee, T. J., Carrell, T. D., Zecker, S. G., Nicol, T. B., & Koch, D. B. (1996). Auditory neurophysiologic responses and discrimination deficits in children with learning problems. Science, 273, 971-973.

Smith, C., Logemann, J., Burghardt, W., Carrell, T., & Zecker, S. G. (1997). Oral sensory discrimination of fluid viscosity. Dysphagia, 12, 68-73.

Tremblay, K., Kraus, N., McGee, T., & Zecker, S. (1998 June). The time course of auditory learning: Neurophysiologic changes during speech-sound training. Proceedings of the 16 International Congress on Acoustics, 2023-2024.

Bowen, R.W., Wright, B.A., Zecker, S.G. & Rudden, D. (1999). Temporal pattern-masking functions in dyslexic and normal observers. Investigative Ophthalmology and Visual Science, 40, 533.

Bowen, R., Wright, B., & Zecker, S.G. (1999). Dyslexic observers show a backward time shift in masking of patterns of low spatial frequency. In Vision Science and Its Applications, O.S.A. Technical Digest (Optical Society of America, Washington, D.C.), 161-164.

Bradlow,  A.R., Kraus, N., Nicol, T., McGee, T., Cunningham, J, Zecker, S.G. & Carrell, T. (1999). Effect of lengthened formant transition duration on discrimination and representation of CV syllables by normal and learning disabled children.  Journal of the Acoustical Society of America, 104(4), 2086-2096.

Wright, B.A., Bowen, R.W. & Zecker, S.G. (2000). Nonlinguistic perceptual deficits associated with reading and language disorders.  Current Opinion in Neurobiology, 10, 482-486.

Zecker, S.G. (2000) Underachievement and learning disabilities in children who are gifted.  Talent Development, Spring, 18-23.

Cunningham, J., Nicol, T., Zecker, S. & Kraus, N. (2000) Speech-evoked neurophysiologic responses in children with learning problems: Development and behavioral correlates of perception. Ear and Hearing, 21(6), 554-568.

Hemmer, S.A., Pasternak, J.F., Zecker, S.G. & Trommer, B.L. (2001).  Stimulant therapy and

seizure risk in children with ADHD. Pediatric Neurology, 24(2), 99-102.

Bowen, R.W., Wright, B.A. & Zecker, S.G. (2001).  Pattern masking deficits associated with dyslexia: An analysis of psychometric functions, in Vision Science and Its Applications, OSA Technical Digest (Optical Society of America, Washington, D.C.), 60-63.

Cunningham, J., Nicol, T., Zecker, S.G., Bradlow, A. & Kraus, N. (2001).  Neurobiologic responses to speech in noise in children with learning problems: Deficits and strategies for improvement. Clinical Neurophysiology,  112, 758-767.

Cunningham, J., Nicol, T., King, C., Zecker, S.G. & Kraus, N (2002).  Effects of noise and cue enhancement on neural responses to speech in auditory midbrain, thalamus and cortex. Hearing Research, 169, 97-111.

Hayes, E.A., Warrier, C.M., Nicol, T.G., Zecker, S.G. & Kraus, N. (2003). Neural plasticity following auditory training in children with learning problems.  Clinical Neurophysiology, 113 , 1-12.

Wright, B.A., Zecker, S.G. & Reid, M.D. (2003). Learning problems, delayed perceptual development, and puberty.  The Journal of the Acoustical Society of America, 113, 4(2), 2208.

Zecker,  S. G. (2004). Attention-deficit/hyperactivity disorder: Information for school-based practitioners . Neurophysiology and Neurogenic Speech and Language Disorders, October, 8-14.

Wright, B. A. and Zecker,  S. G. (2004).  Learning problems, delayed development, and puberty. Proceedings of the National Academy of Sciences USA, 101(26), 9942-9946.

Banai,  K., Nicol, T.,  Zecker,  S. G. & Kraus, N (2005).  Brainstem timing: Implications for cortical processing and literacy.  Journal of Neuroscience, 25(43), 9850-9857.

Russo, N., Nicol, T., Zecker, S. G., Hayes, E. & Kraus, N. (2005) Auditory training improves neural timing in the human brainstem.  Behavioural Brain Research, 156, 95-103.

Smith, C.H., Logemann, J.A., Burghardt, W. R., Zecker, S.G. & Rademaker, A.W. (2006) Oral and oropharyngeal perceptions of fluid viscosity across the age span.  Dysphagia 21(4), 209-217.

Vogel, S.A., Leyser, Y., Burgstahler, S., Sligar, S. R. & Zecker, S. G. (2006).  Faculty knowledge and practices regarding students with disabilities in three contrasting institutions of higher education.  Journal of Postsecondary Education and Disability, 18(2), 109-123.

Wright, B. & Zecker, S.G. (2006)  Learning problems, delayed development and puberty. American Association of Child and Adolescent Psychiatry Proceedings, 44.

Abrams, D.A., Nicol, T., Zecker, S.G. & Kraus, N. (2007)  Auditory brainstem timing predicts cerebral asymmetry for speech. The Journal of Neuroscience, 26, 11131-11137.

Johnson, K.L., Nicol, T.G., Zecker, S.G. & Kraus, N. (2007) Auditory brainstem correlates of perceptual timing deficits. Journal of Cognitive Neuroscience, 19, 376-385.

Russo, N.M., Bradlow, A.R., Skoe, E., Trommer, B.L., Nicol, T, Zecker, S.G. & Kraus, N. (2008). Deficient brainstem encoding of pitch in children with autistic spectrum disorders. Clinical Neurophysiology, 119(8), 1720-1731.

Johnson, K.L., Nicol, T. Zecker, S.G., Bradlow, A.R., Skoe, E. & Kraus, N. (2008). Brainstem encoding of voiced consonant-vowel stop syllables. Clinical Neurophysiology, 119(11), 2623-2635.

Abrams, D., Nicol, T. Zecker, S.G. & Kraus, N. (2008). Right-hemisphere auditory cortex is dominant for coding syllable patterns in speech. Journal of Neuroscience, 28(15), 3958-3965.

Banai, K., Hornickel, J., Skoe, E., Nicol, T., Zecker, S. & Kraus, N. (2009). Reading and subcortical auditory function. Cerebral Cortex, 19(11), 2699-2707.

Russo, N., Zecker, S., Trommer, B., Chen, J. & Kraus, N. (2009). Effects of background noise on cortical encoding of speech in autism spectrum disorders. Journal of Autism and Developmental Disorders, 39(8), 1185-1196.

Hornickel, J., Skoe, E., Nicol, T., Zecker, S. & Kraus, N. (2009). Subcortical differentiation of stop consonants relates to reading and speech-in-noise perception. Proceedings of the National Academy of Sciences, 106(31), 13022-13027.

Russo, N., Nicol, T., Trommer, B, Zecker, S. & Kraus, N. (2009). Brainstem transcription of speech is disrupted in children with autism spectrum disorders. Developmental Science, 12(4), 557-567.

Abrams, D., Nicol, T., Zecker, S. & Kraus, N. (2010). Rapid acoustic processing in the auditory brainstem is not related to the cortical asymmetry for the syllable rate of speech. Clinical Neurophysiology, 121(8), 1343-1350.

Anderson S., Skoe E., Chandrasekaran B., Zecker S. & Kraus N. (2010) Brainstem correlates of speech-in-noise perception in children. Hearing Research. 270:151-157.

Hornickel J., Chandrasekaran B., Zecker S., Kraus N. (2010) Auditory brainstem measures predict reading and speech-in-noise perception in school-aged children. Behavioural Brain Research. 216: 597-605.

Russo N.M., Hornickel J., Nicol T., Zecker S., & Kraus N. (2010) Biological changes in auditory function following training in children with autism spectrum disorders. Behavioral and Brain Functions 6:60.

Abrams D., Nicol T., Zecker S. & Kraus, N. (2011) A possible role for a paralemniscal auditory pathway in the coding of slow temporal information. Hearing Research, 272, 125-134.

Hornickel J., Chandrasekaran B., Zecker S. & Kraus N. (2011) Auditory brainstem measures predict   reading and speech-in-noise perception in school-aged children.  Behavioural Brain Research, 216, 597-605.

Hornickel J., Zecker S., Bradlow A. & Kraus N. (2012) Assistive listening devices drive neuroplasticity in children with dyslexia. Proceedings of the National Academy of Sciences, 109(41): 16731–16736.

Lee, J., Dhar, S., Abel, R., Banakis, R., Grolley, E., Zecker, S. & Siegel, J  (2012) Behavioral hearing thresholds between 0.125 and 20 kHz measured using a clinically-viable calibration measure. Ear and Hearing, 33 (3), 315-329.

Zecker, S., Hoffman, H., Frisina, R., Dubno, J., Dhar, S., Wallhagen, M., Kraus, N., Griffith, J., Walton, J., Eddins, D., Newman, C., Victorson, D., Warrier, C., & Wilson, R. (2013) Audition assessment using the NIH Toolbox. Neurology. 80, Suppl 3, 1-4.

Rogus-Pulia, N., Pierce, M., Mittal, B., Zecker, S. & Logemann, J. (2014) Changes in swallowing physiology and patient perception of swallowing function following chemoradiation for head and neck cancer. Dysphagia, 29(2), 223-233.

Rogus-Pulia, N., Pierce, M., Mittal, B., Zecker, S. & Logemann, J. (2015) Bolus effects on patient awareness of swallowing difficulty and swallow physiology after chemoradiation for head and neck cancer. Head and Neck, 37(8), 1122-1129.

White-Schwoch, T., Carr, K., Thompson, E., Anderson, S., Nicol, T., Bradlow, A., Zecker, S., & Kraus, N. (2015) Auditory processing in noise: A preschool biomarker for literacy. PLOS Biology, 10.1371/journal.pbio.1002196.

Nativ-Zeltzer, N., Logemann, J., Zecker, S. & Kahrilas, P. (2016) Pressure topography metrics for high-resolution pharyngeal-esophageal manofluorography—a normative study of younger and older adults. Neurogastroenterology and Motility, 26, 1-11.

Lam, S., White-Schwoch, T., Zecker, S., Hornickel, J. & Kraus, N. (2017) Neural stability: A reflection of automaticity in reading. Neuropsychologia, 103, 162-167.

Abrams, D., Nicol, T., White-Schwoch, T. Zecker, S. & Kraus, N. (2017) Population responses in primary auditory cortex simultaneously represent the temporal envelope and periodicity features in natural speech. Hearing Research, 1-15.

**PUBLICATIONS: BOOK CHAPTER**

Johnson, D.J., & Zecker, S.G. (1991). Visual processing and dyslexia. In J. Stein, (Ed.), Vision and visual dysfunction, Vol. 13. London: MacMillan.

**PRESENTATIONS: INVITED (SINCE 2002)**

(2002) <u>Doubly exceptional: Learning and attention problems in children who are gifted</u>. At Center for Talent Development Lecture Series, Northwestern University, Evanston, IL

(2002) <u>Attention-Deficit/Hyperactivity Disorder and Related Behavior Disorders of Childhood and Adolescence: Identification, Diagnosis and Treatment.</u> At the International Conference on Special Education, Taipei, Taiwan, Republic of China.

(2002) <u>Attention-Deficit/Hyperactivity Disorder in the Classroom.</u> At Chia-Yi National University, Chia-Yi, Taiwan, Republic of China.

(2003) <u>Diagnosis and Treatment of ADHD in College-Age Students.</u> Keynote Speaker at South Suburban College Faculty Development Day, South Holland, Illinois.

(2003) <u>Auditory Processing and Listening Comprehension Disorders: Diagnosis and Treatment.</u> At the International Conference on Special Education, Taipei, Taiwan, Republic of China.

(2003) <u>Mathematics Disorder in Children: Deficient Processes Underlying Learning.</u> At Swiss-German International School, Hong Kong.

(2004). <u>Approaches in the identification of learning disabilities and their implications.</u> At Escuela Lincoln, San Isidro, Buenos Aires, Argentina.

(2004). <u>Planning in-school accommodations for children with attention-deficit/hyperactivity disorder.</u> At Belgrano Day School, Buenos Aires, Argentina.

(2004). <u>Mathematics disabilities: Procedural and retrieval deficits.</u> At Hyde Park Day School, Chicago, Illinois.

(2006) <u>Learning problems, delayed development and puberty</u>. At the Annual Meeting of the American Association of Child and Adolescent Psychiatry and Asociacion Mexicana de Psiquiatria Infantil, San Diego, CA, October 2006. (with B.A. Wright)

(2006) <u>Underachievement and Twice-Exceptional Children.</u> At Northwestern University Center for Talent Development *Opportunities for the Future Conference,* Evanston, Illinois.

(2008) <u>Listening and Literacy: A Biological Marker of Auditory Processing.</u> At The Center for Research in Speech and Language Processing, Chulalongkorn University, Bangkok, Thailand, August 2008.

(2008) <u>Brainstem Transcription of Speech in Autism Spectrum Disorder.</u> At International Meeting for Autism Research, London, UK, May. (with N. Russo et al).

(2008) <u>Mathematics Disabilities: Underlying Causes and Effective Interventions</u>. Keynote speech at Association of Educational Therapists Conference, Chicago, February.

(2008) <u>BioMARK: A Biological Marker for Auditory Processing Disorder</u>. At Nebraska Speech-Language Hearing Association Annual Convention, Kearney, NE, October.

(2010) <u>Technology to Enhance Differentiation.</u> At Chicago Public Schools Meaningful Science Consortium Showcase, Evanston, IL, February.

(2010) <u>AHDH in High School Students who are Gifted.</u> At Northside Preparatory High School, Chicago, IL, February.

(2011) <u>Mathematics Disability in the Early Years: Assessment and Intervention.</u> At Learning Disabilities Association Conference, Jacksonville, FL, February.

(2011) Classroom FM System Use and Reading Disorders: Biological and Learning Outcomes (with J. Hornickel and N. Kraus) at Educational Audiology Association Annual Meeting, Nashville, TN, August.

(2014) The New DSM-5: Implications for Diagnosis and Remediation of Neurodevelopmental Disorders. At American Educational Therapists Conference, Chicago, April.

(2015) Support for Children with Learning Challenges in Early Childhood. At Learning Disabilities Association Conference, Chicago, February.

(2015) How and Why We Need to Assess Reading for Children with Speech and Language Impairment. At Innovations in Science and Practice Conference, Evanston, Illinois, April.

(2015) Anxiety Disorders and Testing Accommodations Requests: Is the Emperor Wearing Any Clothes? At Twelfth Annual Testing Agencies Disability Forum, Bloomington, MN, September.

(2015) Best Practice:  Assessment of Reading and Reading-Related Processes in Children with Language Impairment. At Chicago Public Schools, Chicago, November.

(2016) Interventions that work for students with ADHD, at North Shore Country Day School, Winnetka, Illinois, October and November.

(2016) Speech and Language Impairments and Their Relationship to Disorders of Reading and Written Language, to Chicago Public Schools Special Educators, September.

(2016) Interventions that Work for Students with ADHD, at North Shore Country Day School, Winnetka, Illinois, October and November.

(2017) How the Brain Learns Math, at Professionals in Learning Disabilities, Chicago, October

## PRESENTATIONS: CONTRIBUTED (LAST 15 YEARS)

(2001). Pattern masking deficits associated with dyslexia. At Association for Research in Vision and Ophthalmology, Monterey, CA. (with R. Bowen and B. Wright).

(2001). Auditory processing and neural plasticity in response to auditory-perceptual training in children with learning problems. At Association for Research in Otolaryngology, St. Petersburg Beach, FL: (with E. Hayes, B. Wible, and N. Kraus).

(2002). Audiovisual integration of speech in children with learning disabilities: The McGurk effect. At Association for Research in Otolaryngology, St. Petersburg Beach, FL: (with E. Hayes, K. Tiippana, M. Sams and N. Kraus).

(2002). Patterns of cortical hemispheric asymmetry to speech sounds in normal and learning-impaired children. At Association for Research in Otolaryngology, St. Petersburg Beach, FL. (with D. Abrams, T. Nicol and N. Kraus).

(2002). Long-term perceptual and neurophysiological changes following auditory training in children with learning problems. At Cognitive Neuroscience Annual Meeting, San Francisco, CA.  (with E. Hayes and N. Kraus).

(2003) Encoding of speech sounds in quiet and background noise in the brainstem: Normal and learning-impaired children. At Association for Research in Otolaryngology, Daytona Beach, FL. (with N. Russo, G. Musacchia, T. Nicol and N. Kraus).

(2003) Learning problems, delayed perceptual development and puberty. Acoustical Society of America, 145th Meeting,  Nashville, TN. (with B. Wright and M. Reid).

(2003). The relationship between auditory processing and academic achievement. At American Speech-Language Hearing Association, Chicago. IL.

(2003). <u>Normal and learning-impaired children's brainstem response to speech.</u> At American Speech-Language Hearing Association, Chicago. IL. (with G.A. Musacchia, N. Russo, T. Nicol, & N. Kraus).

(2003). <u>Training of learning impaired children: Cognitive, perceptual and physiologic change.</u> At American Speech-Language Hearing Association, Chicago. IL. (with E. Hayes, D. Abrams, T. Nicol, C. Warrier & N. Kraus).

(2003). <u>Delayed perceptual development and auditory-based learning disabilities.</u> At American Speech-Language Hearing Association, Chicago. IL. (with B. Wright and M. Reid).

(2004). <u>Brainstem timing in learning disabled children with excessive auditory backward masking.</u> At Association for Research in Otolaryngology, Daytona Beach, FL (with K. Johnson, T. Nicol, B. Wright & N. Kraus).

(2004). <u>Auditory training improves neural timing in the human brainstem.</u> At Association for Research in Otolaryngology, Daytona Beach, FL (with N. Russo, T. Nicol, E. Hayes & N. Kraus).

(2005). <u>Speech evoked brainstem deficits in learning impaired children with poor temporal resolution.</u> At American Audiological Society, Phoenix, AZ (with K. Johnson, T. Nicol & N. Kraus).

(2005) <u>Cortical and cognitive consequences of brainstem timing deficits.</u> At Association for Research in Otolaryngology, New Orleans, LA.

(2006) <u>What can brainstem timing teach us about learning disabilities?</u> At Association for Research in Otolaryngology, Baltimore, Maryland (with Banai, K., Russo, N, Nicol, T. & Kraus, N.).

(2006) <u>BioMAP: Neurotechnology for diagnosing and treating auditory processing disorders.</u> At Learning Disabilities Association of America Annual Meeting, Jacksonville, Florida. (with Nicol, T. & Kraus, N.).

(2006). <u>The integrity of the brainstem response in autism.</u> At Society for Neuroscience, Atlanta, Georgia.(with Russo, N., Skoe, E., Bradlow, A., Trommer, B. & Kraus, N).

(2007). <u>Developmental changes in the temporal and spectral encoding of speech in early childhood.</u> At International Evoked Response Audiometry Study Group, Bled, Slovenia. (with Johnson, K.L. and Kraus, N.).

(2007). <u>Brainstem encoding of acoustic characteristics of voiced stop consonants.</u> At American Auditory Society, Scottsdale, Arizona. (with Johnson, K.J., Skoe, E. & Kraus, N.).

(2007). <u>Primary and non-primary cortical encoding of the speech envelope: Implications for neural representation and perception in humans.</u> At Association for Research in Otolaryngology Midwinter Meeting, Denver, Colorado. (with Abrams, D., Nicol, T., Hartmann, M. and Kraus, N.).

(2007) <u>Gestural influences on spatial representation in children with learning disabilities.</u> At Midwestern Psychological Association Annual Meeting, Chicago, Illinois (with Meyer, A.).

(2008) <u>BioMAP: A biological marker of auditory processing.</u> At the Department of Otolaryngology, Ramathibodi Hospital, Mahidol University, Bangkok Thailand.

(2008) <u>Effects of classroom Edulink use on neural and behavioral function.</u> At the American Speech-Language Hearing Association Meeting, Chicago, February. (with J. Hornickel and N. Kraus).

(2008) <u>Reading and subcortical auditory function.</u> At 10th Annual International Conference on Cognitive Neuroscience, Bodrum, Turkey, July. (with K. Banai et al).

(2008) <u>The Audition Toolbox.</u> At Building the NIH Toolbox: Research in Cognitive, Motor, Emotion and Sensation Function, Bethesda, MD, October.

(2009) <u>Behavioral audiograms measured in humans using a multipurpose instrument.</u> At Association for Research in Otolaryngology Midwinter Meeting, Baltimore, MD, February. (with Abel, R. et al).

(2009) <u>Brainstem encoding of speech and noise and its relationship to reading and listening in Noise.</u> Association for Research in Otolaryngology Midwinter Meeting, Baltimore, MD, February. (with Hornickel, J. et al).

(2009) Reading and auditory processing: A biological perspective. At American Auditory Society, Scottsdale, AZ, March. (with Hornickel, J. et al.).

(2009) <u>Identifying relationships among neural measures using reading and structural equation modeling</u>. At 13th Annual Research Forum, Northwestern University, Evanston, IL, September. (with J. Hornickel et al.).

(2009) The NIH Toolbox and the Assessment of Auditory Function. At the American Speech-Hearing-Language Association, New Orleans, Louisiana, November.

(2010) Identifying relationships among neural responses to speech, hearing speech in noise, and reading using structural equation modeling. 2010 MidWinter Meeting for the Association for Research in Otolaryngology, Anaheim, CA, March. (with J. Hornickel et al.).

(2010) Subcortical neural markers of reading and speech-in-noise impairments in children. 2010 Society for the Scientific Study of Reading, Berlin, Germany, July. (with J. Hornickel, et al)

(2011) Classroom FM System Use and Reading Disorders: Biological and Learning Outcomes at 18th Annual Meeting of the Society for the Scientific Study of Reading. St. Pete Beach, FL, August (with J. Hornickel and N. Kraus).

(2011) FM System Use Impacts Reading Skills and Neural Function. Presented at 15th Annual CSD Research Forum, Evanston, September (with J. Hornickel and N. Kraus).

(2011) Adults with ADHD and Remembering the Future. Presented at 15th Annual CSD Research Forum, Evanston, September (with D. Karidi).

(2012) Prospective Memory, Aging and ADHD. Presented at Cognitive Aging Conference, Atlanta, GA, April (with D. Karidi and P. Rendell).

(2013) Adults with ADHD, Prospective Memory and Executive Function. Presented at ADHD Worldwide, Tel Aviv, Israel, February (with D. Karidi and P. Rendell).

(2013) The NIH Toolbox Measures of Hearing: Initial Norming Data. Presented at American Auditory Society, Scottsdale, AZ, February (with H. Hoffman, J. Dubno and 10 others).

(2013) The NIH Toolbox Measures of Hearing: Normative Data. Presented at the American Speech-Language-Hearing Association Conference, Chicago, IL, November (with J. Griffith, R. Wilson and 10 others).

(2013) Prospective Memory Error Type of Adults with and without ADHD. Presented at Psychonomic Society Annual Meeting, Toronto, Ontario, Canada (with D. Karidi and P. Rendell).

(2018) Optimal Nipples for Efficient Barium Expression During the Videofluoroscopic Swallow Exam at Dysphagia Research Society 2018 Annual Meeting, Baltimore, March (with K. McGrattan Thakhar, A. and Martin-Harris, B.)

(2018) Supporting Your Gifted Child's School Performance: Identifying and Meeting the Special Learning Challenges of Gifted Children. Keynote Address at the Northwestern Center for Talent Development Opportunities Conference, June.

(2018) Language Impairment and Academic Achievement: Relations and Interventions. At the Northwestern 4th Annual CSD Connect Conference, April.

(2018) Optimum Nipples for Barium Expression During the Videoflouroscopic Swallow Exam. Poster presented at ASHA Annual Convention, November. (with Thakkar, A., Martin-Harris, B. & McGrattan, K.

**RESEARCH IN PROGRESS**

Zecker, S., Trinh, J. and Hosterman, J.  Extended time accommodations requested and received on the GED:  Too much time on their hands?

Van Santen, F. & Zecker, S.  Appropriate procedures for determining proper amounts of extended time in testing.  Manuscript in preparation

**COMMITTEES: DEPARTMENT AND UNIVERSITY**

| | |
|---|---|
| 1985-1988 | Member, Communication Sciences and Disorders Basic Science Committee. |
| 1985-1999 | Member, Communication Sciences and Disorders Aging Committee. |
| 1985-2003 | Member, Communication Sciences and Disorders Computer Committee. |
| 1992-2012 | Member, Communication Sciences and Disorders Curriculum Committee (Chair, 1994-1996 and 2002-2004) |
| 1991-1996 | Member, School of Speech Honors Convocation Committee |
| 1992-present | Member, University Parking and Traffic Committee (Chair, 1994-2002) |
| 1998-1999 | Member, Evanston Campus Planning Committee |
| 2001-2005 | Member, School of Communication Facilities Committee |
| 2004-2010 | Member, Communication Sciences and Disorders Doctoral Education Committee (Chair 2006-2008) |
| 2005 | Member, Strategic Planning Committee |
| 2006-present | Member, University Services Advisory Committee |
| 2010-2014 | Member, Speech, Language and Learning Program Committee |
| 2011-2014 | Member, Speech, Language and Learning Clinic Committee |
| 2013-2015 | CSD Clinic Space Planning Committee |
| 2014 | Member, School of Communication Faculty Innovations Small Grants Committee |
| 2014-present | Member, Communication Sciences and Disorders PhD Program Committee |
| 2014-present | Member, University Senate |
| 2016-present | Member, University Senate Student Affairs subcommittee |

**PROFESSIONAL MEMBERSHIPS**

Learning Disabilities Association of America

International Dyslexia Association

Children and Adults with Attention Deficit Disorder

Midwest Neuropsychology Group

Midwestern Psychological Association

Professionals in Learning Disabilities and Special Education

Fellow, International Association for Research in Learning Disabilities

## COURSES TAUGHT

Information Processing and Learning Disabilities (Spring and Summer 1986-1988, Spring 1991)

Psychological and Educational Evaluation in Learning Disabilities (Fall 1985-1988, 1990-2009)

Advanced Statistics (Spring 1986-2000, 2003-8, 2018)

Experimental Design in Communicative Disorders (Winter 1986-2000, 2006-2008)

School-Age Diagnostic Clinic (Winter 1986-1999)

Brain and Cognition (Spring and Summer, 1989; Spring 1998)

Development and Disorders of Mathematics (Summer 1990-1991, 1993, 1995-2000, 2004, 2006, 2008; Spring 1992, 1994, 2001, 2003, 2005, 2007, 2009; Winter 2011-2016)

Attention Deficit Disorder and Related Behavior Disorders (Summer 1992-2017, Spring 2018-2019)

Advanced Seminar on Attention (Fall 1994)

Psychoeducational Assessment and Testing Principles (Fall 1985-1997, 2001-2009)

Diagnostic Procedures for Exceptional Children (Fall 1998-2000, 2008-2009)

Processes and Pathologies of Human Communication (Winter 1996-98, 2004-2006, 2012-2015)

Foundations of Research in Learning Disabilities (Winter 2001-2002)

Experimental and Theoretical Aspects of Learning Disabilities (Spring 2001-2002)

Nature and Measurement of Intelligence (Spring 2000, 2002, Winter 2004, 2006)

Research Procedures in Communication Sciences & Disorders (Winter 2005-2009, Fall 2010-2011)

Learning Disabilities (Winter 2009-2019)

Diagnostic and Remedial Procedures for Children with Learning Disabilities (Fall 2010-2012)

Language Disorders Overview (Winter 2013-2015)

Language Disorders (Spring 2012-2014)

Statistics in CSD (Fall 2013-2017)

## DISSERTATION COMMITTEES: CHAIRED

| | | |
|------|------|------|
| 1989 | Karen Hux | Performance on Selected Measures of Linguistic and Verbal Problem Solving Skills Following Severe Closed Head Injury. |
| 1991 | Randy Partridge | Individual Differences in the Neuropsychology of Reading. |
| 1991 | Nancy Smith | Self-Concept in College Students with Learning Disabilities. |

| 1993 | Donald Compton | The Effect of Word Frequency and Orthographic Redundancy on Word Recognition of Children Who are Good and Poor Readers. |
| 1993 | Charise Mita | Acquisition of Event Knowledge by Young Children: Effects of Differential Exposure and Elicitation Procedures. |
| 1994 | Mark Driscoll | The Development of an Objective Assessment Tool for Attention Deficit Disorder |
| 1994 | Liane Grayson | Lexical Representation and Access: What do We Do with Compounds? |
| 1997 | Jane Drueck | Conceptual Understanding and Solution Procedures for Double-Digit Addition and Subtraction in Average Math Achievers, Low Math Achievers, and Low Math Achievers at Risk for Learning Disabilities. |
| 1999 | Hsiu-Fei Lee | Factors Influencing Early Computational Skills in Taiwanese Children with Average and Below Average Achievement in Mathematics. |
| 2001 | Cynthia Dupuy | The Role of Working Memory and Transcription Automaticity in Written Language Among Adolescents with Learning Disabilities: A Comparison of Production by Hand and by Computer |
| 2001 | Victor Chang | The Assessment of Attention/Deficit Hyperactivity Disorder: An Investigation of Diagnostic Practice and Specific Areas of Concern Across Health Care Providers |
| 2002 | Sarah Valliath | The Efficacy of a Computer-Based Phonological Awareness Training Program: Effects on Phonological Awareness, Reading and Spelling |
| 2012 | Frank van Santen | Cognitive Processing Profiles of School-Age Children who Meet Low-Achievement, IQ-Discrepancy, or Both Criteria for Underachievement in Basic Reading Skills. |
| 2012 | Diane Morean | Effects of Semantic Weight on Verb Recognition and Retrieval in Aphasia: Implications for the Lexical Conceptual Structure of Verbs. |
| 2012 | Daphne Sajous-Brady | African-American English and Reading Achievement: The Relationships Among Dialect Awareness, Dialect Shifting and Reading Development. |
| 2013 | Daniella Karidi | The Effects of Task Features and Executive Functioning on Prospective Memory Performance of Adults with ADHD |
| 2014 | Saja Jamjoom | Story Reading and Literary Arabic Vocabulary Acquisition in Kindergartners |

## OTHER UNIVERSITY ACTIVITIES

| | |
|---|---|
| 1985-2011 | Member, Program in Language and Cognition |
| 2002-2011 | Member, Cognitive Science Program |
| 2003-2009 | Program Head, Language and Cognition |
| 1986-1989 | Program Coordinator, Human Communication Sciences |
| 1989-1992 | Faculty Associate, Communications Residential College |
| 1991-1999 | Faculty Advisor, Human Communication Sciences |
| 1992-1999 | Faculty Associate, Willard Residential College |
| 2002-2011 | Coordinator, Professional Concentration in Learning Disabilities |
| 1992-2004 | Chair, University Parking and Traffic Committee |
| 2012-present | Member, University Parking and Traffic Committee |
| 2015-present | Member, University Faculty Senate |

## OTHER PROFESSIONAL ACTIVITIES

| | |
|---|---|
| 1995-1996 | Grant reviewer, National Science Foundation, Instrumentation and Laboratory Improvement Competition, Arlington, VA. |
| 1996, 1998 | Grant reviewer, National Science Foundation, Course and Curriculum Development Competition, Arlington, VA. |
| 1998-2005 | Board of Professional Advisors, Cognitive Concepts, Inc., Evanston, Illinois. |
| 2001, 2003 | Grant Reviewer, International Dyslexia Association Grant Program. |
| 2002-present | Editorial Review Board, Learning Disabilities: Research and Practice |
| 2003-present | Disabilities Consultant, National Board of Medical Examiners, Philadelphia, PA |
| 2006-present | Disabilities Consultant, Association of American Medical Colleges, Washington, DC |
| 2007-present | Professional Board of Advisors, The Hyde Park Day Schools, Chicago and Northbrook, IL |
| 2013-2015 | Research Director, Camp STAR, Highland Park, IL |
| 2015-present | Disabilities Consultant, National Board of Osteopathic Medical Examiners, Chicago, Illinois |
| 2018-present | Disabilities Consultant, Law School Advisory Council, Newtown, PA |

# EXHIBIT B

**Steven G. Zecker, Ph.D.**
**Clinical Psychologist**
**2103 Ridge Avenue**
**Evanston, Illinois 60201**
**(847) 866-6933**

January 13, 2017

Cathy Farmer, Psy.D.
National Board of Medical Examiners
Disability Services
3750 Market Street
Philadelphia, PA 19104

Dear Dr. Farmer:

I am writing concerning the materials submitted to your office by Jessica E. Ramsay (USMLE # 5-366-431-4) of Kalamazoo, Michigan, and subsequently forwarded to me for my professional opinion. Ms. Ramsay is a student at the Western Michigan University Homer Stryker School of Medicine (WMUHSSoM). She has requested testing accommodations for taking Step 1 and Step 2-Clinical Knowledge (Step 2-CK) of the United States Medical Licensing Examination (USMLE). Specifically, in her accommodations request, Ms. Ramsay states that she has been diagnosed with Attention Deficit Hyperactivity Disorder-Inattentive Type (ADHD-I) and Reading Disorder (RD), and that as a result of these disabilities she requires a double time extended-time testing accommodation, testing over two days in a distraction-reduced environment, use of laminated paper and colored dry-erase markers, and access to water and a snack to be taken with her medications in order to successfully complete the Step 1 and Step 2-CK examinations.

In support for her claim that she has a disability that qualifies her for USMLE Step 1 and Step 2-CK accommodations, Ms. Ramsay has submitted the following documentation for review: 1) a November 28, 2016 *'USMLE Request for Test Accommodations'* form; 2) a personal statement, dated December 11, 2016, in which she describes the history of her attention and learning difficulties and their impact on her learning and academic functioning; 3) three letters from Dr. M. A. Tanguay, an optometrist in Carrollton, Texas, dated December 11, 1997, December 11, 1997 and January 27, 2000, in which she describes the results of a perceptual skills evaluation she conducted on December 11, 1997; 4) a photocopy of the protocol for the Test of Visual-Perceptual Skills (TVPS), administered by Dr. Tanguay on December 11, 1997; 5) a September 2, 2016 *'Addendum or (sic) Report of September 22, 2014 Regarding Jessica Ramsay'* provided by C. Livingston, M.A., of Kalamazoo, Michigan; 6) a September 22, 2014 letter to 'Dr. Ziemkowski' from Mr. Livingston, in which he indicates that his testing had yielded an ADHD-I diagnosis; 7) a copy of Mr. Livingston's resume; 8) a photocopy of the protocol for the Wechsler Adult Intelligence Scale-IV (WAIS-IV), administered by Mr. Livingston on September 12, 2014; 9) a May 17, 2010 medical chart, including a history and description of current symptoms for Ms. Ramsay from A. Smiy, M.D. of Genesis Family Health Center in St. Joseph, Michigan; 10) results of a physical examination conducted on Ms. Ramsay on July 29, 2014 by K. Turner, M.D., of Village Family Medicine in Columbus, Ohio; 11) an *'ADD/ADHD Verification Form'* completed for the Office for Disability Services at Ohio State University (OSU) by Dr. Smiy on August 13, 2010; 12) an *'Access Plan'* for Ms. Ramsay from the OSU Office for Disability Services, dated May 17, 2010; 13) an *'Exam Proctor Sheet'* from the OSU Office for Disability Services, dated May 18, 2010; 14) three *'Essential Abilities for Completion of the Medical Curriculum Attestation'* forms from WMUHSSoM, dated July 16, 2014, June 4, 2015 and June 8, 2016; 15) a *'Request for Reasonable Accommodation'* form from WMUHSSoM,

1

dated August 6, 2014; 16) a *'Reasonable Accommodation Outcome Form'* from WMUHSSoM, dated November 16, 2015; 17) a November 3, 2015 *'To Whom It May Concern'* letter from Ms. Ramsay in which she requests that her current accommodations be extended to include clinical skills courses at WMUHSSoM; 18) Ms. Ramsay's undated *'My Student Dashboard'* form; 19) June 3, 2015 and April 14, 2016 letters from Ms. Ramsay in which she requests a continuation and expansion of the accommodations she had been receiving at WMUHSSoM; 20) NBME *'Subject Examination Program'* results from four examinations in 2016; 21) a September 20, 2016 *'Certification of Prior Test Accommodations'* form completed by D. Overton, M.D., Associate Dean at WMUHSSoM, in which he states that a double time extended-time accommodation and testing in a distraction limited room have been provided for Ms. Ramsay since October, 2014; 22) a copy of Ms. Ramsay's transcript from St. Joseph High School in St. Joseph, Michigan (2004-2008); 23) a copy of Mr. Ramsay's undergraduate transcript from Ohio State University (2008-2012); 24) an *'MCAT Score Report'*, providing scores from one administration of the test in 2011; and 25) copies of December 2016 email correspondence between Ms. Ramsay and M. Goldberg, Ph.D., and J. Cohen, both of the NBME.

In her *'USMLE Request for Test Accommodations'* form, Ms. Ramsay states that she was diagnosed with a reading disorder in 1997 and was given a "provisional" dyslexia diagnosis in 2009. As I will discuss in subsequent sections of this letter, neither of these statements is supported by the documentation she submitted. She also states that she was provided a double-time accommodation throughout her time as an undergraduate and medical student; these claims are also not supported by the documentation I will be reviewing.

Ms. Ramsay writes in her lengthy December 11, 2016 personal statement that her ADHD and dyslexia have caused her academic difficulties since early elementary school, although she was never accommodated until college. She writes that as a second grader she reversed letters when reading and writing, which resulted in an evaluation by a therapeutic optometrist, M. Tanguay, whose testing indicated difficulties in visual-spatial processing and visual discrimination. This testing apparently did not result in any intervention or formal accommodations being implemented. Ms. Ramsay writes that she was in a gifted program through fifth grade when she lived in Texas and in an accelerated academic program from sixth grade through high school after moving to Michigan. She describes various struggles she says she experienced at different points of her education, but she also states that prior to college she was able to function adequately because "the work load was easier and there was much less of it". Although she indicates that she was able to function successfully through high school, she also states that she is "scarred" by the "torture" that every assignment created. I note that despite having produced a well-written nine-page-long personal statement, Ms. Ramsay indicates that writing is "pure agony" for her and she experiences "panic and despair" and "awareness of the impending doom" while working on tasks. Such descriptions in my professional opinion are highly suggestive of a significant affective component to her described struggles, although as I will indicate, this has never been explored in any evaluation. As an undergraduate, Ms. Ramsay writes that the demands of school left her "feeling like a tornado had torn through my brain, leaving behind random, broken fragments" and resulted in her being unable to apply the corrective measures to her work as she had been able to do in the past. Apparently the tipping points that led her to seek an evaluation were her inability to earn a grade above 'A-' in a Spanish class and her inability to complete an organic chemistry midterm. This resulted in her receiving "temporary accommodations" until she underwent testing. This 2009 testing, with Dr. Smiy, resulted in an ADHD diagnosis and, "provisionally", a dyslexia diagnosis. She began receiving a time and one-half extended time accommodation, among other accommodations, following this evaluation, but indicates that this was still inadequate on some tests and assignments. Ms. Ramsay indicates that her grades improved following the implementation of accommodations, and that the accommodations have remained essential to her success as a medical student.

2

Dr. Tanguay conducted the first evaluation submitted by Ms. Ramsay in December 1997, at which time Ms. Ramsay was 7 years old and in second grade. This testing apparently did not result in a report; rather, Dr. Tanguay wrote a half-page-long letter on which she summarizes her findings. She also provides a photocopy of the protocol for the Test of Visual-Perceptual Skills (TVPS), which was apparently the only test she administered. Unfortunately she provides only age-equivalent results for each subtest (and fails to provide standard scores or percentiles) and she does not calculate an overall Perceptual Quotient for the test. I also note that Dr. Tanguay incorrectly administered several of the TVPS subtests by failing to observe the ceiling rules for stopping after a prescribed number of errors. Dr. Tanguay summarizes her results by indicating that Ms. Ramsay performed "above age level" on two subtests, "just below her age level" on two subtests and showed "substantial deficits" on two subtests. She provides no diagnosis, and none is appropriate in my opinion, given that only a single measure was administered and it was administered incorrectly and incompletely scored. I note that in her *'USMLE Request for Test Accommodations'* form, Ms. Ramsay indicated that Dr. Tanguay diagnosed her with a reading disorder based on this testing, but her 1997 report of testing makes no mention of a reading problem and Dr. Tanguay apparently never assessed reading during testing. In her January 27, 2000 *'To Whom It May Concern'* letter, Dr. Tanguay indicates that additional testing in 1998 revealed that Ms. Ramsay "scored above average in all categories" when retested, and stated that her "comprehension and perceptual skills are excellent". She also indicated that Ms. Ramsay's hyperopia (for which she had been wearing glasses) might "slightly reduce" her reading speed.

Ms. Ramsay's next testing was conducted by Mr. Livingston 17 years later, in September 2014, at which time she was in medical school. Again this evaluation failed to yield a comprehensive report of testing; rather Mr. Livingston summarizes the results in a one-page letter to 'Dr. Ziemkowski' at WMUHSSoM. He indicates that his evaluation consisted of a diagnostic interview and testing of intellectual ability and reading. I note that the history that Ms. Ramsay provided for Mr. Livingston is markedly different than that which she reported in her personal statement. For example, while she indicates in her personal statement that she performed well in accelerated programs through high school and had not been tested after Dr. Tanguay's evaluation, she told Mr. Livingston she had good grades only until 4th grade and that she had "various testing" in elementary and middle school. She also told Mr. Livingston that "an ophthalmological exam" revealed "poor focus". Ms. Ramsay further indicated that she had been diagnosed with ADHD and Dyslexia by her primary care physician while she was an undergraduate. Ms. Ramsay submitted the protocol from the Wechsler Adult Intelligence Scale-IV (WAIS-IV), which was administered during testing. Her overall ability was not calculated due to the variability among WAIS-IV Index scores, which ranged from superior (Verbal Comprehension (VCI): 127 and Perceptual Reasoning (PRI): 127) to low average (Processing Speed (PSI): 81). Among the 12 WAIS-IV subtests that were administered, eight were above average, two were average and two were low average. Mr. Livingston also assessed Ms. Ramsay's reading comprehension with an unidentified test on which she scored in the above average range (no actual score was provided). Based on this very limited information, Mr. Livingston diagnoses Ms. Ramsay with ADHD Inattentive Type (ADHD-I), severe. Among his recommendations, he states that "at the discretion of" WMUHSSoM, Ms. Ramsay "could be considered for" extended time. However, there is no indication from Mr. Livingston's brief letter to Dr. Ziemkowski that he evaluated Ms. Ramsay's attentional functioning with either subjective or objective tools; as a result it is unclear how he arrived at the ADHD-I diagnosis. Further, despite Ms. Ramsay's comments to Mr. Livingston that she was stressed, he conducted no testing of her psychological functioning. In my professional opinion this testing was not adequate for establishing a diagnosis of ADHD-I or for supporting the provision of accommodations, including extended time.

In his September 2, 2016 *'Addendum or Report of September 22, 2014 Regarding Jessica Ramsay',* Mr. Livingston addresses a request for more information regarding his 2014 testing and his recommendation that Ms. Ramsay be provided with accommodations. He states that the ADHD-I

3

diagnosis was based in part on her reported "difficulties with focus and headaches as early as age five". He also cites Dr. Tanguay's testing as supporting the diagnosis, but as I have discussed, a) she never addressed attention in her evaluation, and b) subsequent testing by Dr. Tanguay revealed that Ms. Ramsay "scored above average in all categories" and that her "comprehension and perceptual skills are excellent". Mr. Livingston further refers to 2009 notes from Dr. Smiy stating that she was "always a slow reader" (a conclusion unsupported by any test results) and had "focus issues". Her also mentions that fact that Ms. Ramsay was accommodated at both Ohio State and WMUHSSoM as support for his diagnostic conclusions, but the provision of accommodations does not demonstrate a disability in the absence of diagnostic evidence for a substantial impairment in functioning. Mr. Livingston also provides some additional information about the reading test he administered, stating that it was the Wechsler Individual Achievement Test (WIAT). He concludes this letter by stating that his ADHD-I diagnosis is supported by "objective test results", but as I have discussed, neither his nor Dr. Tanguay's testing assessed attentional functioning objectively. He also indicates that "there is historical information that suggests a likelihood of dyslexia", despite the fact that the only documentation of reading achievement (his own testing with the WIAT) yielded an above average score. In my opinion Mr. Livingston's points in the letter do not adequately address my previously stated concern that he failed to have sufficient evidence to support the diagnosis of a disability.

The 2010 medical history and description of current symptoms from Dr. Smiy indicate that Ms. Ramsay was in good general health at that time. I note that, in contrast to what she had told Mr. Livingston, Ms. Ramsay indicated that she had "no problems" in high school. She also stated that "college stress is causing her to switch letters around a bit", which in my professional opinion points to a disorder in affective functioning and not reading, given that she did not report this problem prior to medical school. There is no indication from these medical records that Dr. Smiy administered either subjective or objective measures of attention or any test assessing Ms. Ramsay's reading in the 30 minutes he indicates he spent with her. Dr. Smiy never provides a firm diagnosis in this record; rather he writes "add vs possible dyslexia—pt has more focus issues than dyslexic tendencies. recommend trial of Ritalin as prescribed". He adds that "add survey and literature provided", which suggests to me that Ms. Ramsay did not complete any rating scales during the office visit. In my professional opinion, this brief office visit did not provide sufficient support for an ADHD diagnosis (or 'add' as Dr. Smiy refers to it), and I believe that he also was sufficiently uncertain about the diagnosis that he declined to provide one definitively.

The one-page July 29, 2014 physical examination conducted by Dr. Turner reveal that Ms. Ramsay was in generally good health but had been experiencing migraine headaches. This report also indicates that Ms. Ramsay has ADHD and Dyslexia; it does not appear that this was based on any testing conducted by Dr. Turner but rather was based on Ms. Ramsay's self-report of a history of these diagnoses.

The 'ADD/ADHD Verification Form' completed for Ohio State on August 13, 2010 by Dr. Smiy indicates that he arrived at an ADHD-I diagnosis based on developmental and medical history and an interview, although documentation of this was not provided in his chart information. He reiterates that Ms. Ramsay has "comprehension difficulty" (despite her above average comprehension score in Mr. Livingston's testing) and "dyslexic tendencies" (although it appears he had never asked her to read). He indicates that Ms. Ramsay was exhibiting five of the nine DSM-IV symptoms of inattention, and none of the nine DSM-IV Hyperactivity/Impulsivity symptoms. I note that DSM-IV required that at least six symptoms in either category needed to be present in order for an ADHD diagnosis to be provided; thus, based on these results, Ms. Ramsay failed to qualify for an ADHD-I diagnosis. He also comments that she "may need additional time" on tests. In my opinion, this qualified suggestion is without support from any of the information that Dr. Smiy had obtained. Thus, in my professional opinion, this form indicates

4

that Ms. Ramsay did not meet the DSM-IV criteria for ADHD and was not substantially impaired in fucntioning, and support for the recommended accommodations was lacking.

The *'Access Plan'* for Ms. Ramsay from the OSU Office for Disability Services is dated May 17, 2010, which means that it was completed (and she was approved for accommodations) three months before Dr. Smiy completed the *'ADD/ADHD Verification Form'*. This plan indicates that Ms. Ramsay was approved for a time and one-half extended-time accommodation and preferential registration. The May 18, 2010 *'Exam Proctor Sheet'* from the OSU Office for Disability Services indicates that she utilized accommodations during the Spring Quarter 2010.

The three annual *'Essential Abilities for Completion of the Medical Curriculum Attestation'* forms from WMUHSSoM indicate that Ms. Ramsay understood the abilities and skills that the school states are "essential and necessary" for success in the program and indicated each time that she was not capable of meeting these abilities in the absence of accommodations. In her August 4, 2014 *'Request for Reasonable Accommodation'* form, Ms. Ramsay states that she requires accommodations because of "ADHD/ADD, Dyslexia and Migraines". She writes that she utilized accommodations on many (but not all) exams and found them "very helpful". She reiterates that she was diagnosed with ADHD and Dyslexia in her sophomore year of college, but as I have discussed, Dr. Smiy never tested her reading achievement or provided her with a Dyslexia diagnosis. In her June 3, 2015 request, she asks for a continuation of the accommodations provided in the past year, with an increase in the extended-time accommodation to double time. In Ms. Ramsay's April 4, 2016 request she repeats her request for double time and adds a request for the ability to use dry-erase markers and take her medications during exams. The November 16, 2015 *'Reasonable Accommodation Outcome Form'* from WMUHSSoM indicates that Ms. Ramsay was approved for a time and one-half extended time accommodation for completing write-ups. In her November 13, 2015 *'To Whom It May Concern'* letter, Ms. Ramsay states that due to "recent challenges" she is requesting an extension of her accommodations to also include her Clinical Skills courses. She indicates that because of her claimed Dyslexia, it takes her "considerably longer" to enter information into her notes.

The four 2016 NBME *'Subject Examination Program'* results forms reveal that Ms. Ramsay's performance on them has been quite variable and ranged from "Lower Performance" to "Higher Performance" across the various tests and domains.

Ms. Ramsay submitted results from one unaccommodated MCAT administration in 2011 for review. Her score (30M) placed her in the above average range in comparison with other medical school aspirants. Her scores on the four sections of the test ranged from average (Writing and Verbal Reasoning) to above average (Physical Sciences and Biological Sciences). Despite her claim that she is incapable of completing standardized tests within the standard time limits provided, in my professional opinion the fact that she was able to perform very well on the MCAT in the absence of accommodations provides strong evidence that she is not substantially impaired in functioning and is thus able to fully access the Step 1 and Step 2-CK examinations without accommodations.

Ms. Ramsay submitted her St. Joseph High School and Ohio State transcripts for review. Her high school transcript reveals that she obtained mostly 'A' grades, with no grade below 'B+' during her four years at the school, and she graduated with a 3.75 GPA. This high level of academic success was achieved in the absence of accommodations. Ms. Ramsay's Ohio State transcript indicates that she obtained grades in the 'A/B' range in all but one course and she graduated with a 3.58 GPA. Ms. Ramsay was unaccommodated during her first year at Ohio State; although she indicates in her personal statement that her academic performance improved after she began receiving accommodations, I note that her GPA during her freshman year was essentially the same as her overall GPA when she graduated.

5

In his September 20, 2016 *'Certification of Prior Test Accommodations'* form, Dr. Overton indicates that a time and one-half extended-time accommodation on clinical skills exams and a double time accommodation on written exams, along with other accommodations including testing in a private room have been provided for Ms. Ramsay since October 2014. He indicates that these accommodations are being provided because of Ms. Ramsay's ADHD <u>and</u> ADD.

In Ms. Cohen's December 12, 2016 email to Ms. Ramsay, she indicates that her request for accommodations is considered incomplete and describes the additional documentation (her MCAT score report) needed to complete her submission. I note that the requested documentation was submitted and is part of what I have been reviewing in this letter. In Dr. Goldberg's December 29, 2016 email to Ms. Ramsay, she writes that Mr. Livingstone's letter to Dr. Ziemkowski, which I discussed previously, lacked test results and a summary of Ms. Ramsay's relevant history and functioning. She requests a copy of the report of the evaluation that Mr. Livingston conducted. No such report for submitted for review.

No additional documentation was provided for my review of Ms. Ramsay's accommodations request. To summarize, my review of the documentation she submitted does not in my professional opinion indicate that she at this time has a disability that qualifies her for accommodations according to the Americans with Disabilities Act, as amended (ADAA). She was apparently a strong student from kindergarten through high school in the absence of accommodations. Ms. Ramsay's diagnostic history is very poorly documented, but based on the information she supplied for review, she was initially evaluated in 1997 as a 7 year-old by an optometrist, Dr. Tanguay, who administered a single visual processing test that was incompletely scored and portrayed Ms. Ramsay as having variable skills in the visual domain. Her testing with the same test a year later apparently resulted in "above average performance in all areas", although no report of that testing was submitted for review. I note that Dr. Tanguay apparently never administered any tests of reading to Ms. Ramsay, nor did she diagnose Ms. Ramsay with a reading disorder, but Ms. Ramsay has repeatedly indicated that this testing yielded such a diagnosis. In 2009 Dr. Smiy saw Ms. Ramsay for a 30-minute period and writes in her chart that he believes that she has 'ADD', although she appears to have not met the diagnostic criteria for the diagnosis of an attention deficit. I note that Dr. Smiy never formally provided that diagnosis and apparently did not produce a formal report of his evaluation. Ms. Ramsay's most recent testing, with Mr. Livingston in 2014, similarly did not yield an evaluation report. Mr. Livingston administered only a test of mental ability (which indicated average or higher ability overall as well as on 10 of 12 subtests) and a reading test (which indicated above average comprehension). He provided an ADHD-I diagnosis for Ms. Ramsay, but he did not indicate that he evaluated Ms. Ramsay's attentional functioning with either subjective or objective measures. Thus, Ms. Ramsay has never undergone testing that resulted in a formal report of the evaluation, and there is in my opinion no support for the ADHD, reading disability and Dyslexia diagnoses that she claims to have received. Importantly, Ms. Ramsay was a highly successful elementary and high school student in the absence of accommodations, and she also achieved at a high level at Ohio State prior to the implementation of accommodations. Further, she obtained an above average unaccommodated MCAT score in 2011. Her score on this test under standard administration conditions is inconsistent with Ms. Ramsay's statements that she has been unable to complete any tests within their time limits, and in my professional opinion it provides strong evidence that she is not disabled in a manner that prevents her form being able to fully access the Step 1 and Step 2-CK exams in the absence of accommodations. Given my conclusions, which in my professional opinion do not indicate that Ms. Ramsay is substantially limited in functioning in a manner that warrants accommodations, I recommend that you deny her request for USMLE Step 1 and Step 2-CK accommodations.

Please feel free to contact me again if I may provide you with any additional information

regarding Jessica Ramsay's request for USMLE Step 1 and Step 2-CK accommodations.

Sincerely;

*/By typing my name below I am confirming my intent to sign this document on 1/13/2017/*

Steven G. Zecker, Ph.D.
Clinical Psychologist

# EXHIBIT C

**Steven G. Zecker, Ph.D.**
**Clinical Psychologist**
**2103 Ridge Avenue**
**Evanston, Illinois 60201**
**(847) 866-6933**

July 19, 2018

Cathy Farmer, Psy.D.
National Board of Medical Examiners
Disability Services
3750 Market Street
Philadelphia, PA 19104

Dear Dr. Farmer:

    I am writing concerning the materials submitted to your office by Jessica E. Ramsay  (USMLE # 5-366-431-4) of Kalamazoo, Michigan and subsequently forwarded to me for my professional opinion. Ms. Ramsay is a student at the Western Michigan University Homer Stryker School of Medicine (WMUHSSoM).  She has requested testing accommodations for taking Step 1 of the United States Medical Licensing Examination (USMLE).  Specifically, in her accommodations request Ms. Ramsay states that she has been diagnosed with Attention Deficit Hyperactivity Disorder-Combined Type (ADHD-C), Specific Learning Disability with Impairment in Reading (SLD-R), Specific Learning Disorder with Impairment in Written Language (SLD-W), Migraines with Aura, and Clotting Disorder with Post-Thrombotic Syndrome (CDPTS), and as a result of these disabilities she requires a double time extended-time accommodation and testing over two days with additional break time in a private testing room in order to successfully complete the Step 1 examination.  My areas of professional expertise will not allow me to provide an informed opinion concerning the Migraines with Aura and CDPTS diagnoses; I will restrict my opinions to the ADHD-C, SLD-R, and SLD-W diagnoses.

    In support for her claim that she has disabilities that qualify her for USMLE Step 1 accommodations, Ms. Ramsay has submitted the following extensive documentation for review: 1) two *'USMLE Request for Test Accommodations'* forms, dated November 28, 2016 and June 6, 2018; 2) two personal statements, dated December 11, 2016 and June 6, 2018 in which she describes the history of her disabilities and their impact on her past and current functioning; 3) December 11, 1997 and January 27, 2000 *'To Whom It May Concern'* letters from M. Tanguay, a therapeutic optometrist in Carrolton, Texas in which she describes the results of a perceptual skills evaluation she conducted (including test protocol); 4) a summary report of an evaluation conducted in September 2014 by C. Livingston, M.A., a limited licensed psychologist in Kalamazoo, Michigan; 5) an *'Addendum or (sic) Report of September 22, 2014 Regarding Jessica Ramsay'* from Mr. Livingston, dated September 2, 2016 (including copies of two test protocols and Mr. Livingston's résumé); 6) a report of a *'Neurocognitive Consultation'* conducted in October 2017 by A. Lewandowski, Ph.D., a clinical psychologist and Clinical Assistant Professor at WMUHSSoM; 7) a report of a *'Neurocognitive Examination'* conducted in November 2017 by Dr. Lewandowski; 8) a February 7, 2018 *'Addendum'* to Dr. Lewandowski's report; 9) a May 23, 20918 letter to Ms. Ramsay from Dr. Lewandowski in which he clarifies his recommendations for accommodations; 10) a June 20, 2018 letter to Ms. Ramsay from Dr. Lewandowski in which he provides additional test scores and data tables from the November 2017 evaluation; 11) a summary of an office visit with A. Smiy, M.D., of St. Joseph, Michigan in March 2009; 12) a summary of a physical examination conducted

1

by K. Turner, M.D., in July 2014; 13) a May 17, 2010 *'Access Plan'* completed for the Office for Disability Services at Ohio State University 14) an August 13, 2010 *'ADD/ADHD Verification Form'* from the Office for Disability Services at Ohio State University; 15) a Spring 2010 *'Exam Proctor Sheet'* from the Office for Disability Services at Ohio State University; 16) three *'Essential Abilities for Completion of the Medical Curriculum Attestation'* forms from WMUHSSoM, dated July 16, 2014, June 4, 2015 and June 6, 2016; 17) a *'Request for Reasonable Accommodation'* form completed by Ms. Ramsay on August 6, 2014; 18) five *'Decision of the Essential Abilities Committee Student Request for Reasonable Accommodation'* forms, dated between October 2014 and April 2017; 19) a *'Reasonable Accommodation Outcome Form'* from WMUHSSoM, dated November 16, 2015; 20) seven *'Score Interpretation Guide for Examinees'* forms from NBME Subject Examination Program tests taken in 2016 and 2017; 21) two *'NBME Comprehensive Basic Science Examination'* reports from administrations of the test in April 2016 and April 2017; 22) three *'NBME Customized Examination Profile'* forms from tests taken in 2014, 2015 and 2016; 23) four letters written by Ms. Ramsay between 2014 and 2016 and submitted to WMUHSSoM in which she requests accommodations; 24) a *'My Student Dashboard'* form dated December 11, 2016 that summarizes her medical school course and examination performance; 25) her transcript from St. Joseph (MI) High School (2004-2008); 26) her transcript from Ohio State University (2008-2012); 27) a score report from one administration of the MCAT in April 2011; 28) a *'USMLE Step 1 Score Report'* with results from one administration of the test in July 2017; 29) an April 12, 2018 letter to the NBME from D. Overton, M.D., MBA, Associate Dean at WMUHSSoM, in which he states his support for Ms. Ramsay's request for test accommodations; 30) a June 4, 2018 *'To Whom It May Concern'* letter from B. Ruekberg, M.D., a member of the Psychiatry faculty at WMUHSSoM, in which he states his support for Ms. Ramsay's accommodations request; 31) a May 29, 2018 *'To Whom It May Concern'* letter from J. Houtman, M.D., of Bronson Hospital in Kalamazoo, in which she states her support for Ms. Ramsay's accommodations request; 32) two *'USMLE Certification of Prior Test Accommodations'* forms from Dr. Overton, dated September 20, 2016 and June 1, 2018, in which he indicates that Ms. Ramsay has been receiving accommodations at WMUHSSoM since October 2014; 33) a March 10, 2017 letter to Ms. Ramsay from M. Goldberg, Ph.D., Manager, Disability Services at the NBME, in which she is informed that her previous request for Step 1 accommodations had not been approved; 34) a June 7, 2018 letter to the NBME from L. Berger, an attorney with Reisman, Carolla and Gran, LLP, of Haddonfield, New Jersey, in which he summarizes Ms. Ramsay's request for accommodations and requests that the new information she has submitted be carefully considered so that she will be provided accommodations; 35) a December 29, 2016 email to Ms. Ramsay from Dr. Goldberg at the NBME in which additional documentation to support her earlier accommodations request was requested; and 36) December 2016 email correspondence between Ms. Ramsay and J. Cohen, Disability Services Specialist at the NBME in which her MCAT score report is requested to complete her previous request for Step 1 accommodations.

Ms. Ramsay writes in her two lengthy personal statements and two *'Request for Test Accommodations'* forms that her ADHD-C, Specific Learning Disorders, migraines and residual symptoms from deep vein thrombosis necessitate multiple accommodations. She states that her disabilities make her unable to read and process information "with normal effectivity or efficiency, or sometimes even at all". She indicates that the additional effort she must expend to process information also adversely impacts other basic daily living activities. She states that she has always "struggled with flipping, merging and tangling letters" when reading and writing and that she must laboriously "untangle" each word she encounters. She describes the writing process for her as "pure agony". This, in turn, creates fatigue that impacts her ability to perform well. She reports needing to read material multiple times in order to comprehend it fully. She indicates that she utilizes colored pens, pencils and highlighters, a time-consuming process, to aid her reading, but this is not possible on examinations such at Step 1, necessitating the implementation of other less effective strategies, such as "acting out or demonstrating" what she reads. Ms. Ramsay writes that despite these significant impairments she was

2

successful on past standardized tests such as the SAT and MCAT because "the tests were designed so that many of the questions could be answered without reading the whole question", a statement with which I disagree. Ms. Ramsay indicates that her ADHD causes her to be highly distractible, impulsive and extremely restless. Despite having elaborately described procedures she utilizes to aid her reading and writing, Ms. Ramsay states that her ADHD causes her to forget the steps in a process and forget what she is doing. She states that in 2016 she experienced deep vein thrombosis which damaged the circulation in her legs and necessitates that she be able to move around frequently and not remain seated for extended periods of time; thus she is requesting additional break time in order to be able to get up from her seat and walk around. Ms. Ramsay writes that her migraines create "blind spots" that affect her reading, and that this problem can be avoided by having additional break time. She states that she experienced a migraine during her initial Step 1 attempt a year ago, and this impacted her ability to see, read and think. Ms. Ramsay indicates that the difficulties she describes have been present "since I was little", although I note that she was not accommodated prior to college. She indicates that she was able to "mask" her difficulties through her hard work, but this left her "mentally exhausted" at the end of the day and unable to socialize with friends. I note that in her 2016 personal statement Ms. Ramsay indicates that her struggles have caused stress, depression and anxiety, but in her 2018 statement she makes no mention of any affective difficulties that she has experienced. In 1998 she underwent perceptual skills training with Dr. Tanguay, which she indicates did not improve her reading. I note that there is a lack of evidence supporting the efficacy of such training on reading behavior. She writes that she was informally accommodated in some situations during elementary school because of her inability to complete exams on time. However, in general she indicates that she was able to "force herself" to attend and read adequately. She was in an accelerated curriculum from 6th grade through high school. It was not until she was an undergraduate at Ohio State that the demands of "school, work and life" made it impossible for her to self-accommodate and as a result she consulted with Dr. Smiy in 2009; she states that he diagnosed her with ADHD-Inattentive Type and dyslexia. Based on these diagnoses she began receiving accommodations at Ohio State in 2010. She indicates that with accommodations she was able to perform better academically, although as I will discuss later in this review, her undergraduate GPA actually declined slightly subsequent to the implementation of accommodations. At WMUHSSoM she has continued to receive accommodations, and her extended time accommodation was increased from the 50% she had received as an undergraduate to 100%.

Ms. Ramsay was evaluated by Dr. Tanguay, an optometrist, in 1997 because of concerns about reversals; at the time of testing she was 7 years old. At the time of testing Ms. Ramsay was wearing glasses. In her December 11, 1997 *'To Whom It May Concern'* letter, Dr. Tanguay indicates that her evaluation indicated that Ms. Ramsay "showed substantial deficits" in visual-spatial relationships, visual discrimination and visual memory; this was apparently based on the administration of a single test, the Test of Visual-Perceptual Skills (TVPS). In the TVPS protocol that Ms. Ramsay submitted for review, I note that Dr. Tanguay reported only unreliable Perceptual Age scores and did not calculate scale scores or percentiles, which make it impossible to determine Ms. Ramsay's level of functioning in comparison to her peers. After this evaluation, Ms. Ramsay underwent perceptual skills training with Dr. Tanguay for four months in 1998; subsequent to this training she indicates that Ms. Ramsay "scored above age level in all categories tested", and states that her comprehension and perceptual skills were "excellent". Dr. Tanguay concludes that Ms. Ramsay "still has the original vision problem" that necessitated glasses and writes that this "may slightly reduce her reading speed", but she does not indicate that she had assessed reading speed with any standardized measure.

Dr. Smiy's medical notes from May 2010 indicate that he saw Ms. Ramsay for a 30-minute appointment because of a complaint of 'ADD/ADHD'. In his brief history he writes that in high school there were "no problems" (contrary to Ms. Ramsay's personal statements) and that "college stress" is causing her to "switch letters around a bit". He apparently did not administer any tests and summarizes

3

by writing "add vs. possible dyslexia- pt has more focus issues than dyslexic tendencies". He recommended a trial of Ritalin. However, given the absence of any formal testing during this brief appointment no formal diagnosis was provided, and none was appropriate in my professional opinion.

The next evaluation that Ms. Ramsay submitted for review was conducted by Mr. Livingston in September 2014. Mr. Livingston did not generate a complete report of this testing; rather he provided a one-page summary of results and conclusions to Dr. Ziemkowski at WMUHSSoM. He indicates that Ms. Ramsay reported that she was tired and stressed and concerned that her school grades did not show her knowledge. Mr. Livingston wrote that measures assessing Ms. Ramsay's verbal comprehension and nonverbal reasoning both placed her at the 96th percentile, and that a composite score representing her working memory, attention and concentration fell at the 63rd percentile (which despite being stronger than nearly two-thirds of her peers, was referred to by Mr. Livingston as representing "relatively low" skills in these areas). Processing speed measures yielded a 10th percentile score. Her reading comprehension was described as above average. Mr. Livingston concludes that results support the diagnosis of ADHD-I, severe; however, the measures of attentional functioning that he reported placed her above the mean and he never demonstrated that Ms. Ramsay met the complete set of diagnostic criteria for a diagnosis of ADHD. He writes that an extended time accommodation on tests "should be considered", despite apparently having not demonstrated a deficit in academic fluency. In his September 2, 2016 'Addendum or (sic) Report of September 22, 2014 Regarding Jessica Ramsay', Mr. Livingston writes that documentation supporting the diagnosis of ADHD-I included reported focus problems and headaches at age 5, the results of Dr. Tanguay's vision testing and 2009 notes from Dr. Smiy stating Ms. Ramsay had "focus issues", none of which in my opinion provide strong support for a formal diagnosis of ADHD. He also indicates that Ms. Ramsay's history of accommodations at Ohio State and WMUHSSoM supported the diagnosis. However, in my opinion his testing in 2014 failed to demonstrate that she met the diagnostic criteria for the disorder. Mr. Livingston also identified the mental ability test (the Wechsler Adult Intelligence Scale-IV (WAIS-IV)) and achievement test (Wechsler Individual Achievement Test (WIAT)) that he used in evaluating Ms. Ramsay and provided photocopies of the cover page of each test's protocol, but these results are not relevant to the ADHD-I diagnosis that he provided. I do note that while Ms. Ramsay states that her reading is impaired, she scored at the 99th percentile on the WIAT Reading Comprehension subtest. Mr. Livingston concludes by stating that his testing demonstrated a need for multiple accommodations, including double time on exams, but in my professional opinion his limited testing he conducted did not demonstrate that Ms. Ramsay was substantially impaired in a manner that warranted accommodations under the Americans with Disabilities Act, as amended (ADA).

The next report of testing that Ms. Ramsay submitted was conducted by Dr. Lewandowski in October 2017, at which time she 27 years old and a student at WMUHSSoM. Ms. Ramsay described a history of "chronic academic disability" and described a history of self-accommodated ADD. She indicated that her 2014 evaluation had resulted in diagnoses of ADHD and dyslexia, but as I have discussed, the only measure of reading administered by Mr. Livingston yielded a score at the 99th percentile, a result that is entirely inconsistent with a dyslexia diagnosis. Because she had not been approved for Step 1 accommodations, Ms. Ramsay was seeking a more comprehensive assessment. She indicated that she was forgetful, having word-finding problems and unable to stop moving. Despite having described herself as experiencing "chronic academic disability", Ms. Ramsay reported that she graduated from high school with a 3.8 GPA and scored "between 27 and 30" on the ACT under standard administration conditions. She also indicated that she had seen a counseling psychologist for unexplained reasons (although she acknowledged some situational dysphoria) and reported that the counseling resulted in a "very positive outcome". Dr. Lewandowski reported that Ms. Ramsay presented "in mild distress" but did not elaborate other than to write that her mood was anxious and she was frustrated. She reported that she had been taking an antidepressant (fluoxetine) but it had been discontinued. She was taking seven other medications, including Adderall (for ADHD), Buspar and Xanax (anti-anxiety medications),

4

and Ambien (apparently to aid sleep). Despite Ms. Ramsay's description of herself as always moving, Dr. Lewandowski described her as normal in this regard. She indicated that she experienced insomnia and was "usually very fatigued". Based on this brief two-hour consultation, Dr. Lewandowski does not provide any diagnosis but indicates he will be conducting comprehensive testing in the future to "better clarify" Ms. Ramsay's status.

Dr. Lewandowski subsequently saw Ms. Ramsay in December 2017 and generated a report of the *'Neurocognitive Examination'* he conducted. The report consists mainly of a table of test scores, with minimal discussion. Dr. Lewandowski does not provide the names of any of the tests he administered, which I note is highly unusual. He indicates that Ms. Ramsay's overall mental ability was high average, with the various domains of cognitive functioning ranging from below average to above average. All measures of academic functioning resulted in scores at or above the 73rd percentile. Nine neuropsychological test results are presented; seven placed Ms. Ramsay in the normal range and two were abnormal. Among six measures of attentional functioning, four resulted in normal scores and two were below average. Six memory scores were reported; five placed Ms. Ramsay above the mean and one was low average. Psychological testing indicated moderate depression, inefficient thinking and health concerns. Based on these results, Dr. Lewandowski diagnoses Ms. Ramsay with Attention Deficit Disorder, Hyperactive, moderate (ADHD-H/I) and Learning Disability (LD), nonverbal (abnormal scanning and processing speed). Notably, he did not diagnose her with any affective disorder, although a substantial part of his recommendations refer to Ms. Ramsay's "mood disturbance" and ongoing affective struggles. Moreover, he fails to consider the role that these psychological difficulties may be playing in Ms. Ramsay's attentional functioning and learning. Further, Dr. Lewandowski failed to indicate on what basis the diagnosis of an attention deficit was made, given that she performed largely within the normal range on whatever test assessing attention that he administered to her. He also provided no indication that Ms. Ramsay met the complete set of criteria for an ADHD diagnosis. Similarly, Dr. Lewandowski did not provide a rationale for the LD diagnosis he provided, and in the absence of specific tests that were administered and a discussion of the findings, there was no basis for such a diagnosis in my professional opinion. In his February 7, 2018 *'Addendum'*, Dr. Lewandowski provided the names of the tests he had administered in his December testing. In his June 20, 2018 letter to Ms. Ramsay, Dr. Lewandowski again provides names of tests as well as tables and plots of results from his earlier testing, but no additional discussion of the findings. In my professional opinion this additional information is consistent with my earlier conclusion that the results of Dr. Lewandowski's testing did not support the diagnosis of a disabling condition that warranted accommodations under the ADA. In his May 23, 2018 letter to Ms. Ramsay, Dr. Lewandowski wrote that his recommendation for Step 1 accommodations should have been for double time, but as I have discussed, in my opinion the results he obtained did not support the diagnosis of a disability warranting accommodations.

The July 29, 2014 *'Physical Examination'* report from Dr. Turner that she completed prior to Ms. Ramsay beginning medical school indicates that Ms. Ramsay had a history of migraine headaches, ADHD and dyslexia, but these were by history and she apparently conducted no testing that would have allowed her to make those diagnoses.

The May 17, 2010 *'Access Plan'* from Ohio State indicates that Ms. Ramsay was approved for a time and one-half extended time accommodation and priority registration. In Dr. Smiy's August 13, 2010 *'ADD/ADHD Verification Form'* he indicates that Ms. Ramsay qualified for the diagnosis of ADHD-I and was currently taking Adderall because methylphenidate had "failed" to treat her difficulties. I note that in indicating the DSM-IV criteria for ADHD that Ms. Ramsay met, Dr. Smiy endorses an insufficient number of Inattention symptoms (five) to yield a valid ADHD-I diagnosis, and he indicates that none of the Hyperactive/Impulsive criteria were met. He also does not provide a specific recommendation for an extended time accommodation, writing that she "may need additional time". The Spring 2010 *'Proctor*

*Sheet'* from Ohio State indicates that Ms. Ramsay utilized accommodations in one of her courses (the course name is illegible in the photocopy) during that term.

Ms. Ramsay submitted a *'Request for Reasonable Accommodation'* form to WMUHSSoM on August 6, 2014. On August 4, 2014, June 3, 2015 and November 3, 2015 she submitted typed requests for accommodations from the school in which she described her accommodations history and requested specific accommodations. The five *'Decision of the Essential Abilities Committee Student Request for Reasonable Accommodation'* forms, dated between October 2014 and April 2017 indicate that she was approved for accommodations during this period. The extended time accommodation was increased to double time in March 2017, and additional accommodations were approved in April 2017. The November 6, 2015 *'Reasonable Accommodation Outcome Form'* indicates that Ms. Ramsay was approved for a time and one-half extended time accommodation on clinical write-ups. In the three *'Essential Abilities for Completion of the Medical Curriculum Attestation'* forms from 2014, 2015 and 2016, Ms. Ramsay indicated that she was capable of meeting the requirements of the medical school curriculum.

Ms. Ramsay submitted seven *'Score Interpretation Guide for Examinees'* forms from NBME Subject Examination Program tests taken in 2016 and 2017 for review. Her scores on these exams ranged from 60% to 81% correct but they cannot be considered relevant to her request for accommodations. Similarly, the two *'NBME Comprehensive Basic Science Examination'* reports from administrations of the test in April 2016 and April 2017 and the three *'NBME Customized Examination Profile'* forms providing results from tests taken in 2014, 2015 and 2016 are not relevant to her claim that she has disabilities that warrant USMLE Step 1 accommodations.

Ms. Ramsay did not submit report cards or school records from any part of her kindergarten through eighth grade education for review; such documentation could have provided evidence of an early impairment in functioning, essential for the diagnoses of ADHD and SLD, neurodevelopmental disorders with an onset of symptoms in childhood. Her high school transcript from her first three years at St. Joseph High School reveals that her grades were entirely within the 'A/B' range and she had earned a GPA of 3.75, which placed her 27th in her class of 237 students. Importantly, this high level of academic achievement was attained in the absence of accommodations. Her undergraduate transcript from Ohio State reveals she obtained only a single grade outside of the 'A/B' range and she graduated with a B.A. in Biological Sciences and a 3.58 GPA. I note that she did not begin receiving accommodations at Ohio State until May 2010, at which time she had earned a 3.66 GPA. Thus, her grades were actually lower after she began receiving accommodations than they were when she was unaccommodated. Ms. Ramsay did not submit her WMUHSSoM transcript for review; her *'My Student Dashboard'* form summarized her performance across a range of courses and examinations, but in the absence of normative data allowing for comparison to peers I am unable to interpret her performance on these measures

Ms. Ramsay took the ACT prior to college entry under standard administration conditions. She did not submit a report of her performance on the test for review, but indicated to Dr. Lewandowski that she had scored "between 27 and 30" on the exam. Such a level of performance would have placed her in the above average range (between approximately the 85th and 95th percentile). Such a level of performance is in my opinion inconsistent with Ms. Ramsay's claim that she has always been unable to finish timed examinations. Ms. Ramsay's MCAT score report reveals that she completed one administration of the test in April 2011. Her scores on the exam (10/09/M/11: 30M) placed her at the 79th percentile in comparison to other medical school aspirants. This above average MCAT score was also achieved under standard administration conditions. Ms. Ramsay's *'USMLE Step 1 Score Report'* reveals that she took the exam in July 2017 under standard administration conditions and obtained a score (191) that was one point below the passing criterion.

6

Ms. Ramsay submitted two letters from WMUHSSoM faculty in support of her accommodations request. In Dr. Overton's April 12, 2018 letter to the NBME he describes the multiple accommodations that Ms. Ramsay has received since beginning medical school. Dr. Overton indicates that Ms. Ramsay "has significant difficulty with reading comprehension", but I note that this statement is inconsistent with Mr. Livingston's 2014 testing, which placed her at the 99th percentile in this domain. While he states his strong support for Ms. Ramsay's accommodations request, he provides no new information that supports her claim that she is substantially impaired in functioning in a manner that warrants accommodations. In Dr. Ruekberg's June 4, 2018 letter he provides a detailed history of Ms. Ramsay's education. He reports that Ms. Ramsay was unable to complete all ACT items but nonetheless obtained what he refers to as an "acceptable" score (which, as I have indicated, placed her at or above the 85th percentile). Similarly, he suggests that Ms. Ramsay's 30M score on the MCAT, which was also above average, underestimated her ability because she had performed at a higher level on untimed practice exams. However, most people, including those without disabilities, perform at a higher level under untimed conditions. He indicates that Ms. Ramsay elected to take the CBSE examination in April 2017 under standard time conditions and states that she was unable to complete all items. However, he does not indicate how she performed on the test. Ms. Ramsay's *'My Student Dashboard'* form indicates that she obtained a score of approximately 68 on the exam. Dr. Ruekberg provides his clinical impression that Ms. Ramsay has multiple disabilities including ADHD-C, and learning disabilities. He had not tested Ms. Ramsay in order to obtain these diagnoses but rather was summarizing what past evaluators had diagnosed. I note that Ms. Ramsay's evaluation with Dr. Smiy had indicated that she displayed zero hyperactive/impulsive symptoms, which led him to diagnose her with ADHD-I, while Dr. Lewandowski's testing yielded an ADHD-H/I diagnosis because insufficient inattentive symptoms were reported. Dr. Ruekberg had apparently combined the results of these two evaluations to suggest that Ms. Ramsay has ADHD-C, although this diagnosis had never been previously provided.

In Dr. Houtman's May 29, 2018 letter she indicates that she has been Ms. Ramsay's primary care physician for two years and also was her instructor at WMUHSSoM prior to this. She does not indicate that she has evaluated Ms. Ramsay for any of the conditions for which she is seeking multiple accommodations, but states that she can confirm from "personal observation" that they are valid and warrant the accommodations requested. Unlike Drs. Ruekberg and Overton, Dr. Houtman also mentions the stress and "flustered" behaviors that Ms. Ramsay has exhibited during testing situations, but she does not suggest that anxiety and/or depression are factors in her academic and examination performance. She indicates that with extended time Ms. Ramsay's performance improved because this "allowed her to perform at her best potential", but I note that the purpose of accommodations is not to maximize an individual's performance but rather is intended to provide full access to the examination.

The two *'USMLE Certification of Prior Test Accommodations'* forms from Dr. Overton, dated September 20, 2016 and June 1, 2018, indicate that Ms. Ramsay has received eight different accommodations while in medical school. He indicates that these accommodations have been provided because of ADHD only, although I note that a number of the accommodations (e.g., use of a calculator and text-to-speech software) are unrelated to an attention deficit. These accommodations have been provided since October 2014.

In your March 17, 2017 letter to Ms. Ramsay, Dr. Goldberg at the NBME informs her that her earlier request for USMLE Step 1 and Step 2-Clinical Knowledge (Step 2-CK) accommodations had not been approved because the documentation she submitted had not demonstrated that she had a substantial impairment in functioning that warranted accommodations under the ADA. Dr. Goldberg also refers to Ms. Ramsay's high level of early unaccommodated academic success as being inconsistent with the presence of neurodevelopmental disorders such as ADHD and SLD. I concur with Dr. Goldberg's decision and add that in my opinion the new documentation that she has submitted continues to fail to

7

demonstrate a substantial impairment in a major life activity.

In Mr. Berger's June 7, 2018 letter to the NBME he addresses Dr. Goldberg's reasoning in denying Ms. Ramsay's earlier accommodations request, and states his support for her current request for accommodations. I note that Mr. Berger refers in his letter to Ms. Ramsay's depression as a factor in her need for accommodations, but as I have discussed, despite evidence from previous testing that Ms. Ramsay experiences affective struggles she never indicated that she been diagnosed with depression. I will not address all of the specific legal points that Mr. Berger makes in support of Ms. Ramsay's accommodations request; my review is only intended to provide my professional opinion as to whether Ms. Ramsay is substantially impaired in a major life activity in a manner that warrants accommodations under the ADA.

The December 2016 email correspondence between Ms. Ramsay and Dr. Goldberg and Ms. Cohen at the NBME concerns requests for documentation that was not initially submitted in Ms. Ramsay's initial accommodations request. These requested documents were all included in the current submission I am reviewing.

No additional documentation was provided for my review of Ms. Ramsay's accommodations request. To summarize, my review of the documentation she has submitted indicates that in my professional opinion she does not have a disability that according to the ADA qualifies her for the accommodations she has requested on the Step 1 examination. Ms. Ramsay was apparently a successful student in her K-12 years in the absence of any accommodations, and she submitted no documentation to indicate that she experienced impairment due to ADHD or a learning disability during this period, as would be expected given that ADHD and SLD are neurodevelopmental disorders with an onset of symptoms in childhood. Ms. Ramsay has undergone multiple evaluations over the past 20 years, but all were in my professional opinion quite superficial and failed to demonstrate that she is disabled. Dr. Tanguay's visual training in 1998 resulted in above average scores in all areas of visual processing subsequent to the intervention. The brief summary of her 30-minute appointment with Dr. Smiy did not yield a formal diagnosis but rather resulted in Dr. Smiy questioning whether she had ADHD or dyslexia. Mr. Livingston's brief 2014 evaluation yielded a diagnosis of ADHD-I, but as I have discussed, he in my professional opinion he failed to demonstrate that she met the complete set of criteria for the disorder, and her strong prior unaccommodated academic record was inconsistent with a disabling attention deficit. Dr. Lewandowski's 2017 evaluation led to a diagnosis of ADHD-H/I, which as I discussed was unexpected because Ms. Ramsay had not endorsed any symptoms in these areas only three years earlier. He also diagnosed Ms. Ramsay with 'Learning Disability, nonverbal' due to abnormal scanning and processing speed, but as I discussed previously, in my opinion there was insufficient support for this diagnosis. Despite the fact that Dr. Lewandowski had administered several subtests that indicated that Ms. Ramsay was depressed and despite her stated ongoing issues with stress and anxiety, neither he nor any of the other evaluators she has seen has ever diagnosed her with an affective functioning disorder. Although she did not submit any score report from the ACT for review, Ms. Ramsay recalled that she had scored at a level higher than at least 85 percent of her peers despite having taken the examination under standard administration conditions. Further, she took the MCAT under standard administration conditions and obtained an above average score in comparison to a select group of medical school aspirants. Such strong levels of unaccommodated standardized test performance in my professional opinion provide strong evidence that Ms. Ramsay is not substantially impaired in a major life function in a manner that warrants accommodations under the ADA.

To summarize, in my professional opinion Ms. Ramsay did not submit documentation that indicated that she is substantially impaired in a major life activity in a manner that warrants accommodations under the ADA. Given my conclusion that Ms. Ramsay is not disabled according to the

ADA, I recommend that you deny her request for USMLE Step 1 accommodations.

Please feel free to contact me again if I may provide you with any additional information regarding Jessica Ramsay's request for USMLE Step 1 accommodations.

Sincerely;

*/By typing my name below I am confirming my intent to sign this document on 7/19/2018/*

Steven G. Zecker, Ph.D.
Clinical Psychologist