IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JESSICA RAMSAY,<br>        Plaintiff | : : : | |
| v. | : : | CIVIL ACTION NO. 19-2002 |
| NATIONAL BOARD OF MEDICAL EXAMINERS,<br>        Defendant | : : : : | |

**PLAINTIFF'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO COMPEL**

**Preliminary Statement**

Plaintiff Jessica Ramsay ("Ramsay") has brought this action against defendant National Board of Medical Examiners ("NBME") under Title III of the Americans with Disabilities Act ("ADA"), and Section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. §794, for an injunction and damages. After a three-day hearing in December 2019, this Court granted Ramsay's motion for preliminary injunction on December 31, 2019, and the Third Circuit affirmed, 968 F.3d 251 (3d Cir. 2020), *cert. denied,* --- U.S. --- (March 8, 2021).

Plaintiff's claim for damages must now be addressed. Damages are available under Section 504. *See, e.g., Furgess v. Pa. Dep't of Corr.,* 933 F.3d 285, 288-89 (3d Cir. 2019). Section 504 is limited to defendants who receive "federal financial assistance," 29 U.S.C. §794(a), and NBME denies that it receives such assistance. Plaintiff therefore propounded discovery about the issue of "federal financial assistance," but NBME objected to and refused to respond to most of plaintiff's requests. The parties conferred, and had a conference call with the Court, and the Court directed the parties to brief the discovery issues. Following the conference, NBME produced some documents in one of the disputed categories (financial statements), but all

five categories remain in dispute. Therefore, plaintiff is moving to compel NBME to respond as to five specific categories discussed below.[1]

## Federal Financial Assistance Is Broadly Defined

Federal financial assistance has been broadly defined to include transfers of money, use of property, services of federal personnel, and any other arrangement by which a federal agency provides or makes assistance available to the entity in question. Significantly, federal financial assistance includes not only the direct transfer of money to the defendant but also money routed through intermediaries that is intended for the defendant. *See, e.g., NCAA v. Smith*, 525 U.S. 459, 468 (1999) ("Entities that receive federal assistance, whether directly or through an intermediary, are recipients" subject to federal civil rights legislation).

Federal regulations make clear that federal financial assistance means:

> any grant, loan, contract (other than a procurement contract or a contract of insurance or guaranty), or any other arrangement by which the Agency provides or otherwise makes available assistance in the form of:
>
> (1) Funds, including funds extended to any entity for payment to or on behalf of students admitted to that entity, extended directly to those students for payment to that entity, or extended directly to those students contingent upon their participation in education or training of that entity;
>
> (2) Services of Federal personnel; or

---

[1] Copies of NBME's objections and responses, which also include the text of plaintiff's requests, are attached to plaintiff's Motion as Exhibits A (Requests for Production of Documents or "RFPs"), B (Interrogatories) and C (Requests for Admissions or "RFAs.")

> (3) Real and personal property or any interest in or use of property
>
> . . . .

*E.g.,* 38 C.F.R. § 18.403(h). [2] As the foregoing makes clear, federal financial assistance can take the form of money or in-kind transfer. *See*, *e.g., U.S. Dep't of Transp. v. Paralyzed Veterans of America,* 477 U.S. 597, 607 n.11 (1986); *Alfano v. Bridgeport Airport Servs.*, 373 F.Supp.2d 1, 6-7 (D. Conn. 2005) (collecting cases demonstrating that "[o]ne can obviously be a recipient of federal financial assistance in kind"). "Whether financial payment may be deemed a government subsidy or mere compensation for services, however, is a complex question that depends on the particular facts and circumstances of the contract and project at issue." *Alfano v. Bridgeport Airport Servs., id.*

Therefore, plaintiff has propounded discovery requests to determine the extent to which NBME receives direct and indirect federal financial assistance, whether in the form of funds, use of property, services of federal personnel, or other in-kind contributions.

**Defendant Has Refused to Respond to Directly Relevant Discovery Requests**

Plaintiff's requests that are based on the definition of federal financial assistance have been met by a brick wall.

NBME objects to virtually all of plaintiff's requests as "not proportional to the needs of the case." *See, e.g.,* NBME's "General Objection" No. 8 to plaintiff's interrogatories:

> Any such information is not relevant to any party's claim or defense and is *not proportional to the needs of the case* given the lack of need for this discovery in resolving the issues and the *burden* of the request (particularly in light of the challenges presented to NBME's staff during the COVID-19 pandemic) relative to its likely benefit. Unless otherwise

---

[2] The cited regulation applies to the Department of Veterans Affairs, which is the agency that paid NBME to develop military and veterans health questions for the USMLE as discussed below. Other federal agencies have similar regulations.

>stated below, NBME is not responding to any of the Interrogatories with regard to such information.

(Italics added.)

NBME is quite wrong. These questions are not only "proportional" but critical to the "needs of the case," because plaintiff is required to demonstrate that NBME received "federal financial assistance" in order to proceed with a claim for damages. None of these questions are burdensome, and NBME's objections make a mockery of the word "burdensome," by asserting this objection to virtually every request.

Alleged lack of "proportionality" cannot be a boilerplate objection. If it is based on "burden," then the objecting party must show what the burden is:

>Nor is the change intended to permit the opposing party to refuse discovery simply by making a *boilerplate objection* that it is not proportional. The parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes.
>
>The parties may begin discovery without a full appreciation of the factors that bear on proportionality. A party requesting discovery, for example, may have little information about the burden or expense of responding. A party requested to provide discovery may have little information about the importance of the discovery in resolving the issues as understood by the requesting party. . . . *A party claiming undue burden or expense ordinarily has far better information — perhaps the only information — with respect to that part of the determination*. A party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them. The court's responsibility, using all the information provided by the parties, is to consider these and all the other factors in reaching a case-specific determination of the appropriate scope of discovery.

Advisory Committee in its Note to the 2015 rule amendments (Italics added). And yet, a boilerplate objection is all that NBME has presented to date.

Therefore, and following a telephone conference with the Court and counsel on March 12, 2021, plaintiff is seeking a ruling concerning NBME's objections.

4

### NBME's Objections Should Be Overruled

Plaintiff seeks a ruling on five specific areas of objection as described below:

**1.      NBME's Objection to Time Period Should Be Overruled.**

Plaintiff requested discovery for the time period from January 1, 2014 to the present. NBME currently is limiting its response to the period from December 12, 2016 (the date when NBME says that it received Ramsay's first request for accommodations)[3] to December 31, 2019, the date when this Court issued the injunction to require that NBME provide accommodations.[4] In this connection, *i.e.,* the relevant discovery period, it should be noted that the injunction entered by this Court – while a very important milestone which made it possible for plaintiff Ramsay to continue her medical education and career – is not the end of this litigation, and even now, NBME provides accommodations only because it has been ordered to do so.

In any case, the period for discovery is not strictly limited to the time limit for Ramsay's claim.  In disability discrimination cases, as in employment discrimination cases, "discovery of information both before and after the liability period may be relevant and/or reasonably calculated to lead to the discovery of admissible evidence."  *See, e.g., Horizon Holdings v. Genmar Holdings,* 209 F.R.D. 208, 212 (D.Kan. 2002).  As this Court stated in *State Farm Mut. Auto. Ins. Co. v. Stavropolskiy,* 2017 U.S. Dist. LEXIS 63720 (E.D.Pa. 2017):

> Discovery need not be confined to matters of admissible evidence; it may encompass any "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy,

---

[3] Initially, NBME limited its responses to the period beginning May 8, 2018, which was later described as an error.

[4] Ramsay first began the process of requesting accommodations over one year earlier, on October 14, 2015.  *See* RAMSAY2-0004 produced to NBME during discovery for the preliminary injunction hearing.  A copy is attached hereto as Attachment 1.  Even if Ramsay's formal request was transmitted on December 12, 2016, the NBME accommodations process is a lengthy one, and not one that occurs on a single day.

> the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

*Id.* at *2. Here, the issue of federal funding is crucial to plaintiff's damages claim, and NBME has made no showing that it would be burdensome to respond for a broader period of time, particularly where plaintiff has narrowly tailored the request to begin on January 1, 2014, less than two years before NBME says that she first requested accommodations..

NBME will go to any lengths to avoid discovery about federal financing. For example, NBME contends that a contract under which NBME was paid $196,006 by the Department of Veterans Affairs[5] to develop "military health/Veteran questions" for the USMLE Step examinations is irrelevant because NBME was only paid through 2015, but this is contradicted by evidence from a website maintained by the federal government, www.usaspending.gov, which shows that this contract continued through at least November 2016 – more than a year after plaintiff first contacted the NBME about needing accommodations, and only days before plaintiff formally applied for accommodations.[6]

NBME also admits that the questions it was paid to develop were used on **all** Step examinations between 2016 and 2019,[7] and plaintiff is seeking further information about the revenue that NBME earned on those Step examinations, *e.g.* NBME's financial statements which NBME also objected to and then produced two days ago, as discussed below. NBME has

---

[5] When plaintiff's requests were served in December 2020, counsel believed that this contract was with the Department of Defense. NBME subsequently produced a document indicating that the contract was with the Department of Veterans Affairs. Of course, a contract with either entity would constitute "federal financial assistance."

[6] *See* https://www.usaspending.gov/award/CONT_AWD_VA74114P0008_3600_-NONE-_-NONE-

[7] *See* NBME's Objection and Answer to Interrogatory No. 2.

produced some of the requested financial statements, but further discovery is needed, and both the financial statement requests and other requests itemized in plaintiff's proposed Order should not be limited to the arbitrarily narrow time period selected by NBME.

### 2. NBME's Objection to Discovery About "Procurement Contracts" Should Be Overruled.

NBME has objected to many specific requests on the asserted ground that "procurement contracts" are irrelevant to the issue of federal financial assistance. *See* Objections to Document Requests Nos. 5, 6, 13; Objections to Interrogatories Nos. 1, 2, 20; and Objections to Requests for Admissions Nos. 5, 7, 8, 22, 23, and 24.[8]

NBME gives no explanation as to what constitutes a "procurement contract," *i.e.,* a contract that is not covered by Section 504. Significantly in *United States v. University Hospital,* 575 F.Supp. 607, 612-13 (E.D.N.Y. 1983), the Court held that any contract which involves providing services to the public is within the scope of Section 504, and therefore not a "procurement contract." Here, NBME admits that it received a contract to develop questions for the USMLE Step examinations, which is a service to the public. Moreover, if the federal government paid more than fair market value for the services provided in the contract, that is a subsidy that would qualify as federal financial assistance.

NBME continued to charge students long after 2015 to take an exam that contained questions developed with federal funding. Whether the final payment was when the NBME claims (2015) or when www.usaspending.gov says (2016), NBME continued to benefit. Ultimately, a determination whether the payments for services provided, and the benefit to

---

[8] NBME asserted the same objection to other requests, but then responded. Therefore, they are omitted from this list, because there is no present need for an Order relating to those requests.

7

NBME, constitute federal financial assistance requires examining the terms of the contract and the value of the services provided.

NBME is not the judge of whether a contract is a "procurement contract" and therefore exempt from Section 504. For example, in *Jacobson v. Delta Airlines, Inc.,* 742 F.2d 1202, 1210 (9th Cir. 1984), the Ninth Circuit held that mail carriage contracts could "constitute federal financial assistance if they include a subsidy but that they do not constitute such assistance if they are merely compensatory." For this reason, plaintiff here is seeking discovery about funds received from any federal government entity between January 1, 2014, and the present, without regard to NBME's characterization of the funds, and also access to all of NBME's financial statements for the relevant years as discussed below. Access to these documents, which NBME deems to be not "proportional," goes directly to the heart of Ms. Ramsay's claims for damages.

> 3. **NBME's Objection to Discovery, About The Usage Of Examination Questions That It Developed With Funding From The Department of Veterans Affairs, Should Be Overruled.**

NBME has refused to answer discovery requests about funding it received from U.S. Department of Veterans Affairs to "develop military health/veterans questions" for the USMLE. Plaintiff requested that NBME describe the questions that were developed under this contract (Interrogatory No. 1), and produce documents relating to the contract (RFP No. 5). NBME generally objected to all of these requests, asserting that it was a "procurement contract," and that the contract "ended in 2015."[9] *See, e.g.,* NBME's response to RFP No. 5. However, NBME did admit that "test items written under the referenced contract appeared on all three USMLE Step exams between December 12, 2016 and December 31, 2019." NBME is continuing to charge medical students to take exams that include these questions it developed with federal

---

[9] As discussed above, www.usaspending.gov says that it ended in 2016.

8

government dollars. Yet NBME has refused to disclose any information about the financial benefit it has derived and likely continues to derive from these questions developed with federal dollars.

Even assuming that discovery were to be limited to the December 2016 to December 2019 timeframe (but see above), it is undisputed that NBME used, during that time period, the questions that the Department of Veterans Affairs paid for. Moreover, even if "procurement contracts" not involving a subsidy do not come under Section 504, NBME's refusal to provide any financial information makes it impossible to determine if this was such a contract, and NBME obviously derived revenue from using these questions during the time period that NBME says is the relevant time period.

Therefore, NBME should be required to turn over all documents relating to receipt of federal dollars for the development of USMLE questions between January 1, 2014 and the present, and all documents relating to revenue produced by the use of those USMLE questions, including the financial statements discussed in the next section.

4. **NBME Has Now Produced Some Of Its Financial Statements, But Only For The Narrow Time Period Arbitrarily Selected By NBME. Production Of The Additional Statements Should Also Be Compelled.**

Plaintiff requested that NBME produce its "annual financial statements including its balance sheet, statement of income, notes to such statements and auditors' reports on such statements." The request was clear and specific, and not burdensome. NBME objected on the ground of "relevance" and "proportionality." Then, two days ago on Wednesday evening, NBME abruptly produced its financial statements for the years ended December 31 of 2016 through 2019.

Plaintiff is glad that these documents have finally been produced. It is unfortunate that NBME delayed production until it was faced with an imminent motion to compel. Even though

9

plaintiff's counsel have had little time to review the additional documents, plaintiff is proceeding with this motion as directed by the Court and to avoid further delay.[10] NBME still has not fully responded to plaintiff's requests, and plaintiff asks the Court to order production of the financial statements for the additional years requested (2014, 2015 and 2020).

> **5.    NBME's Objections to Discovery About Funds Received From The Federation of State Medical Boards, and Discovery About Committee Service By Federal Employees, Should Be Overruled.**

NBME objected to any discovery about funds received by NBME from the co-owner of USMLE, the Federation of State Medical Boards ("FSMB") as "irrelevant" and not "proportional." *See* NBME's Interrogatory Objection No. 8 and NBME's RFA Objection No. 2.

The newly-produced NBME financial statements provide additional evidence why discovery about funds received from FSMB is relevant. According to these statements, NBME and FSMB have a "collaboration agreement" relating to the USMLE Step Examinations, and "Costs of the collaboration are estimated during the year and shared according to the collaboration agreement. A final accounting to achieve the agreed-upon sharing of net revenue is completed by NBME and FSMB at year-end." *See, e.g.,* the 12/31/2019 statement), Note 16 at p. 27 (Bates NBME 02434).[11] Similar statements appear in all of the produced financial statements, and show large transfers to NBME from FSMB in every single year as follows:

---

[10] In the limited time available, counsel have already found some information relating to another discovery dispute, which is discussed in the next section.

[11] The cited page from the 12/31/2019 financial statement is attached as an example, Attachment 2. The information about FSMB to NBME transfers appears in that statement in Note 16, p. 27 (NBME 02524). Copies of all of the financial statements can be provided if the Court wishes.

| Year | Amount |
|------|--------|
| 2015 | $15,820,000 |
| 2016 | $19,808,000 |
| 2017 | $17,848,000 |
| 2018 | $19,656,000 |
| 2019 | $22,516,000 |

As described above, federal financial assistance can be direct or indirect, and can take the form of funds or in-kind contributions. *See, e.g.*, *NCAA v. Smith*, *supra*, 525 U.S. at 468; *U.S. Dep't of Transp. v. Paralyzed Veterans of America*, *supra*, 477 U.S. at 607 n.11; and *Alfano v. Bridgeport Airport Servs.,* 373 F.Supp.2d at 6-7.  For example, in *Alfano,* an employment discrimination action under Section 504, plaintiff alleged that the defendants were intended beneficiaries of a federal grant for improvements to the Bridgeport Airport, and the Court denied a motion to dismiss because "without indication of the federal statute under which the City of Bridgeport received the federal funds, the nature of the contract between the city and defendants, and the nature of defendants' work, it would be premature to decide."  373 F.Supp.2d at 7.  The case at bar is similar to *Alfano*, except that NBME is employing discovery objections, rather than a motion to dismiss, to shield evidence of its receipt of federal financial evidence.  NBME's objections should be overruled.

Although NBME has now produced (some of) the financial statements, as discussed above, additional evidence is needed concerning the relationship between NBME and funds that were channeled through FSMB.  Therefore, NBME should be compelled to answer plaintiff's requests.

NBME also objected to certain discovery requests that relate to the service of federal employees on NBME and USMLE committees, which may constitute "in kind" federal financial assistance as discussed above.  NBME did object but provide an answer to Interrogatory No. 19 relating to such committee service, and did admit that federal employees served as members and

received both expenses and in some cases honoraria for their service, but NBME refused to produce any of the documents reflecting this committee service and these payments. The only justification for NBME's objection is that it was "not a request for the production of documents" (which is simply untrue)[12] and that it is "not relevant." *See* NBME objections to RFP No. 12. Service by federal employees constitutes "in kind" financial assistance to NBME which is plainly relevant, and therefore, NBME should be compelled to produce these documents.

---

[12] Although NBME's objections quoted each of plaintiff's requests, NBME omitted the introductory phrase: "Each document which constitutes, evidences, records, reflects, relates or refers to any of the following:" Therefore, Request No. 12 requests that NBME produce "Each document which constitutes, evidences, records, reflects, relates or refers to" the subjects listed including "[a]ny services provided by any individual employed by a federal agency to the NBME or USMLE . . . ."

## Conclusion

Plaintiff respectfully requests that the Court overrule NBME's objections, so that plaintiff has access to the information that she needs to prove that NBME is a recipient of federal financial assistance.

                        Respectfully submitted,

                        /s/     Lawrence D. Berger
                        Lawrence D. Berger (ID No. 16028)
                        Larry@rcglawoffices.com
                        REISMAN CAROLLA GRAN & ZUBA LLP
                        19 Chestnut Street
                        Haddonfield, NJ  08033
                        (856) 354-0021

                        Mary C. Vargas (ID No. 324005)
                        Mary.Vargas@steinvargas.com
                        Michael S. Stein (*pro hac vice*)
                        Michael.Stein@steinvargas.com
                        STEIN & VARGAS LLP
                        10 G Street NE, Suite 600
                        Washington, DC  20002
                        (202) 248-5092

                        Attorneys for Plaintiff

Dated:  March 19, 2019

**RE: Disability Accommodations**

disabilityservices <disabilityservices@NBME.org>
Wed 10/14/2015 9:55 AM

**To:** Jessica E Ramsay <Jessica.Ramsay@med.wmich.edu>

Dear Ms. Ramsay,

The United States Medical Licensing Examination program provides reasonable and appropriate accommodations in accordance with the Americans with Disabilities Act for individuals with documented disabilities who demonstrate a need for accommodation. Examinees are informed of the availability of test accommodations in the *USMLE Bulletin of Information*, application instructions, and at the USMLE website.

If you would like to request test accommodations, please see the section on Test Accommodations at the USMLE website at www.usmle.org, and submit the appropriate form with your application for USMLE, as outlined in the test **accommodations guidelines**. Please note that we must receive your request before or within the first three weeks of your eligibility period. Allow at least 60 days for processing time from the time we receive your complete file.

*Once Disability Services receives your request for test accommodations, your submission will be acknowledged by e-mail within a few days. If you do not receive an acknowledgement please contact us.*

If you have further questions you may contact us via e-mail at disabilityservices@nbme.org or call 215-590-9700.

Thank you,

*Disability Services*
*National Board of Medical Examiners*
*3750 Market Street*
*Philadelphia, PA 19104-3102*
*TEL: 215-590-9700*
*FAX: 215-590-9422*
*Email: disabilityservices@nbme.org*

---

**From:** Jessica E Ramsay [mailto:Jessica.Ramsay@med.wmich.edu]
**Sent:** Wednesday, October 14, 2015 8:40 AM
**To:** disabilityservices
**Subject:** Disability Accommodations

To whom this may concern:

I am a medical student with a learning disability who will be taking Step 1 in May of 2016 and will need accommodations. I am trying to get ahead on gathering everything I need before I actually need to apply. Can you please provide me with the guidelines for completing the accommodations application and registration, as well list of exactly what documentation I am required to provide?

Thank you for your time,

Attachment 1 to Plaintiff's Memorandum in Support of Motion to Compel

Jessica Ramsay

This electronic message is intended for the named recipient(s) only, and may contain information that is confidential or privileged. If you are not the named recipient, you are hereby notified that any disclosure, copying, distribution, or use of the contents of this message is strictly prohibited. If you have received this message in error, or are not the named recipient, please notify us immediately by contacting the sender at the electronic mail address noted above, and delete and destroy all copies of this message. Thank you.

*This email message and any attachments may contain privileged and/or confidential business information and are for the sole use of the intended recipient(s). Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please notify the sender immediately by reply email and destroy all copies of the original message and any attachments.*

This electronic message is intended for the named recipient(s) only, and may contain information that is confidential or privileged. If you are not the named recipient, you are hereby notified that any disclosure, copying, distribution, or use of the contents of this message is strictly prohibited. If you have received this message in error, or are not the named recipient, please notify us immediately by contacting the sender at the electronic mail address noted above, and delete and destroy all copies of this message. Thank you.



**NATIONAL BOARD OF MEDICAL EXAMINERS®**

**Consolidated Financial Statements**
**For the Years Ended December 31, 2019 and 2018**
**With Independent Auditor's Report**

NBME02496

Attachment 2 to Plaintiff's Memorandum in Support of Motion to Compel

**NATIONAL BOARD OF MEDICAL EXAMINERS**
Notes to Consolidated Financial Statements
December 31, 2019 and 2018

**NOTE 16   COLLABORATION AGREEMENTS**

NBME participates in two collaborations: USMLE and CSEC. In these collaborations, the respective organizations are assigned tasks for which operating expenses are incurred. Each organization is also assigned responsibility for collecting fees from specific examinees. The respective collaboration agreements define methodologies for sharing any net revenue or expense, including the transfer of cash between the organizations during the year.

USMLE

In 1991, NBME and FSMB entered into an agreement establishing the USMLE collaboration for the purpose of developing, administering and scoring the nationally recognized medical licensure examination in the United States. Pursuant to this agreement, NBME and FSMB jointly own USMLE, including the test items, program names, copyrights, etc. The respective organizations share equally in the governance of USMLE by appointing equal numbers of representatives to governing committees. Costs of the collaboration are estimated during the year and shared according to the collaboration agreement. A final accounting to achieve the agreed-upon sharing of net revenue is completed by NBME and FSMB at year-end.

In the Consolidated Statements of Activities, operating revenue includes $22,516,000 and $19,656,000 for the years ended December 31, 2019 and 2018, respectively, associated with the transfer of funds from FSMB to NBME pursuant to the USMLE collaboration agreement in order to achieve the agreed-upon sharing of net revenue. In addition, collaborations receivable in the Consolidated Statements of Financial Position reflects the amount due from FSMB associated with the net revenue sharing provisions of the collaboration agreement.

CSEC

In 2004, NBME and the Educational Commission for Foreign Medical Graduates (ECFMG) entered into an agreement to jointly develop and operate one or more clinical skills evaluation programs. The principle clinical skills evaluation program is operated as a component of USMLE. Pursuant to this arrangement, NBME and ECFMG shared equally the initial cost of construction of the test sites and share equally the operating costs and ongoing capital costs. NBME's portion of the capital costs associated with the CSEC test sites is reflected as CSEC assets (net of accumulated amortization) on the Consolidated Statements of Financial Position and generally consist of leasehold improvements, IT hardware and office equipment. These assets are amortized over their estimated useful lives which range from five to ten years.

**NATIONAL BOARD OF MEDICAL EXAMINERS**
Notes to Consolidated Financial Statements
December 31, 2019 and 2018

**NOTE 16**     **COLLABORATION AGREEMENTS** *(continued)*

CSEC assets consist of the following as of December 31, 2019 and 2018:

|  | 2019 | 2018 |
|---|---|---|
| CSEC assets | $ 13,048,000 | $ 12,997,000 |
| Less: Accumulated amortization | (10,304,000) | (10,462,000) |
| **CSEC assets, net** | $ 2,744,000 | $ 2,535,000 |

Amortization expense for the years ended December 31, 2019 and 2018 was $698,000 and $634,000, respectively. There were disposals of CSEC assets with a cost of $925,000 during 2019 that resulted in a net loss of $69,000. The net loss is included in other losses, net in the Consolidated Statements of Activities.

In the Consolidated Statements of Activities, project and examination expenses includes $24,056,000 and $22,213,000 for the years ended December 31, 2019 and 2018, respectively, associated with the transfer of funds from NBME to ECFMG pursuant to the CSEC collaboration agreement in order to achieve the agreed-upon sharing of net revenue. In addition, collaborations payable in the Consolidated Statements of Financial Position reflects the amount due to ECFMG associated with the net revenue sharing provisions of the collaboration agreement.

**NOTE 17**     **ACQUISITION OF NBHWC**

NBHWC is a non-profit corporation that establishes and maintains standards for health and wellness coach training and education. Effective October 8, 2018, NBME entered into an affiliation agreement with NBHWC to collaborate on the development of a health and wellness coach certification examination and certification (HWCCE) program. A provision of the affiliation agreement provides NBME with control of NBHWC via a majority voting interest in the NBHWC Board of Directors.

Pursuant to the financial terms of the affiliation agreement, NBME agreed to contribute $1,650,000 to NBHWC to cover future operating expenses less $731,000 of contributions provided prior to execution of the affiliation agreement. The affiliation agreement also includes the agreed-upon sharing of net revenue associated with the HWCCE program and the related repayment terms for certain costs incurred by NBME prior to the execution of the affiliation agreement and a portion of the contributions made by NBME after the execution of the affiliation agreement.

At the date of acquisition, NBME provided no consideration to acquire $56,000 of net assets of NBHWC, which consisted of cash and a receivable due from NBME and no liabilities. Accordingly, NBME recognized a $56,000 inherent contribution associated with the acquisition, which is reflected as an increase to net assets without donor restrictions in the Consolidated Statements of Activities for the year ended December 31, 2018.